Jack Silver, Esq. SBN 160575
Jerry Bernhaut, Esq. SBN 206264
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel.    (707) 528-8175
Fax.    (707) 528-8675
lhm28843@sbcglobal.net

Attorneys for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit corporation,<br><br>            Plaintiff<br>    v.<br><br>CITY OF SAUSALITO, and DOES 1-10, Inclusive,<br><br>            Defendants<br>_____/ | CASE NO. :<br><br>COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, RESTITUTION AND REMEDIATION<br>(Environmental -<br>Clean Water Act  - 33 U.S.C. §1251 et seq.;<br>Resource Recovery and Conservation Act - 42 U.S.C. 6901, et. seq.) |

NOW COMES PLAINTIFF, NORTHERN CALIFORNIA RIVER WATCH a non-profit corporation, (hereafter, "RIVER WATCH") by and through its attorneys, and for its Complaint against Defendants CITY OF SAUSALIT0 and DOES 1-10, Inclusive, (hereafter, "DEFENDANTS"), states as follows:

## I.  NATURE OF THE CASE

1.      This is a citizens' suit for relief brought by RIVER WATCH under the Federal Water Pollution Control Act, also known as the Clean Water Act (hereafter, "CWA"), 33 U.S.C. §1251 et seq., specifically Section 505, 33 U.S.C. §1365, 33 U.S.C. § 1311, and 33 U.S.C. § 1342, to stop DEFENDANTS from repeated and ongoing violations of the CWA. These violations are detailed in the

1  Notice of Violations and Intent to File Suit dated August 16, 2007 (hereafter, "CWA NOTICE") made

2  part of this pleading and attached hereto as EXHIBIT A.

3  2.    DEFENDANTS are routinely violating the CWA's prohibition against discharging a pollutant

4  from a point source to Waters of the United States without a National Pollutant Discharge Elimination

5  System("NPDES") permit, CWA §301(a), 33 U.S.C. §1311(a), in the course of their operation of their

6  Sewage Collection System.  Point source discharges to waters of the United States are occurring due to

7  numerous sewage pipeline surface overflows to waters of the United States as well as ongoing

8  underground overflows from aging, deteriorated sewer lines to hydrologically connected waters of the

9  United States, including Richardson Bay.

10  DEFENDANTS collect residential and commercial sewage which is pumped to the treatment

11  plant in the City of Sausalito operated by the Sausalito-Marin City Sanitary District, (hereafter

12  "SMCSD").  SMCSD has identified DEFENDANTS' collection system as a significant source of

13  increased wet weather flows into the treatment plant because of the high level of inflow and infiltration

14  ("I/I") of stormwater and groundwater into the DEFENDANTS' sewer system through cracks, eroded

15  sections and misaligned joints. The SMCSD has identified high salinity I/I into DEFENDANTS' sewer

16  system as a major source of saltwater intrusion into the SMCSD treatment plant, which the SMCSD

17  identifies as a significant factor in causing total suspended solids and biological oxygen demand effluent

18  limit violations. High wet weather flows into SMCSD's treatment plant,  caused in significant part by

19  I/I into DEFENDANTS' sewer lines, creates the need for SMCSD to direct excess flows to bypass

20  biological treatment units directly to secondary clarifiers, and then to be blended with fully treated

21  effluent.  Blending is a compromised treatment process permitted when no feasible alternative is

22  available to prevent loss of life, personal injury, or severe property damage, 40 C.F.R. §122.41(m)(4)(1).

23  Blending has resulted in a number of effluent limit violations when the blended effluent was tested.

24  DEFENDANTS' sewer lines are point sources under the CWA. DEFENDANTS have no NPDES

25  Permit for the discharge of pollutants from a point source to waters of the United States.

26  3.    DEFENDANTS are also routinely violating the Basin Plan, Environmental Protection Agency

27  ("EPA") regulations codified in the Code of Federal Regulations, and toxics standards promulgated by

28  the State Water Resources Control Board in the course of DEFENDANTS' operation of the sewage

1  collection system,  as described in the CWA NOTICE.

2  4.       Under 33 U.S.C. § 1251(e), Congress declared its goals and policies with regard to public

3  participation in the enforcement of the CWA.  33 U.S.C. §1251(e) provides, in pertinent part:

4  *Public participation in the development, revision, and enforcement of any regulation,*

5  *standard, effluent limitation, plan or program established by the Administrator or any State*

6  *under this chapter shall be provided for, encouraged, and assisted by the Administrator*

7  *and the States.*

8  5.       DEFENDANTS illegally discharge to waters which are habitat for threatened or endangered

9  species as that term is defined by the California EPA and the United States EPA.

10  6.       Plaintiff also brings this citizens' suit against DEFENDANTS under the citizen suit enforcement

11  provisions of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., (hereafter,

12  "RCRA"), specifically Sections 7002(a)(1)(A), 42 U.S.C.§ 6972(a)(1)(A) and 7002(a)(1)(B), 42 U.S.C.

13  § 6972(a)(1)(B),  to stop DEFENDANTS from repeated and ongoing violations of the RCRA. These

14  violations are detailed in the Notice of Violations and Intent to File Suit dated August 20, 2007

15  (hereafter, "RCRA NOTICE") made part of this pleading and attached hereto as EXHIBIT B.

16  7.       DEFENDANTS are routinely violating the RCRA's regulatory mandates applicable  to

17  hazardous or solid wastes by causing untreated sewage, a hazardous waste under the RCRA, to be

18  discharged or deposited where it is or probably will be discharged into waters of the State, thereby

19  creating or threatening to create, conditions of pollution or nuisance. ( 42 U.S.C. § 6972(a)(1)(A)).

20  8.       DEFENDANTS are routinely violating the RCRA's prohibition against creating an imminent and

21  substantial endangerment to human health and the environment by the operation of their sewage

22  collection system, as identified in the RCRA NOTICE,  which has caused contamination of soil,

23  groundwater and surface water with fecal coliform and other pathogens, (42 U.S.C. § 6972(a)(1)(B)).

24  9.       RIVER WATCH  seeks declaratory relief, injunctive relief to prohibit future violations, the

25   imposition of civil penalties, and other relief for DEFENDANTS' violations of the CWA § 301, 33

26  U.S.C. § 1311 prohibition against discharging a pollutant to waters of the United States without a

27  NPDES Permit, the RCRA's standards and regulations applicable to hazardous or solid wastes and

28  DEFENDANTS' violation of the RCRA's prohibition against creating an imminent and substantial

1  endangerment to human health and the environment.

2  ## II.  PARTIES

3  10.      Plaintiff, NORTHERN CALIFORNIA RIVER WATCH, is a 501(c)(3) non-profit public benefit

4  corporation duly organized under the laws of the State of California, with headquarters and main office

5  located at 6741 Sebastopol Avenue, Suite 140, Sebastopol, California.  RIVER WATCH is dedicated

6  to protect, enhance and help restore the surface and subsurface waters of Northern California.  Its

7  members live in Northern California including Marin County where DEFENDANTS' sewage collection

8  system facilities and operations are located.

9  11.      Members of RIVER WATCH live nearby to waters affected by DEFENDANTS' illegal

10  discharges.  Said members have interests in the watersheds identified in this Complaint, which interests

11  are or may be adversely affected by DEFENDANTS' violations.  Said members use the effected waters

12  and effected watershed areas for domestic water, recreation, sports, fishing, swimming, hiking,

13  photography, nature walks, religious, spiritual and shamanic practices, and the like.  Furthermore, the

14  relief sought will redress the injury in fact, likelihood of future injury and interference with the interests

15  of said members.

16  12.      RIVER WATCH is informed and believes and on such information and belief alleges that

17  Defendant CITY OF SAUSALITO. is a City  formed under California Government Code § 34000 et.

18  sec., with  administrative offices  located at 420 Litho Street, Sausalito, Marin County, California.

19  13.      DEFENDANTS DOES 1 - 10, Inclusive, respectively, are persons, partnerships, corporations

20  and entities, who are, or were, responsible for, or in some way contributed to, the violations which are

21  the subject of this Complaint or are, or were, responsible for the maintenance, supervision, management,

22  operations, or insurance coverage of DEFENDANTS' sewage collection system facilities and operations.

23   The names, identities, capacities, and functions of DEFENDANTS DOES 1 - 10, Inclusive are presently

24  unknown to RIVER WATCH , who  shall seek leave of court to amend this Complaint to insert the true

25  names of said DOES Defendants when the same have been ascertained.

26  ## III.  JURISDICTIONAL ALLEGATIONS

27  14.      Subject matter jurisdiction is conferred upon this Court by Section 505(a)(1) of the CWA, 33

28  U.S.C. § 1365(a)(1), which states in part that, "any citizen may commence a civil action on his own

COMPLAINT FOR INJUNCTIVE RELIEF                                    4

behalf against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation . . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." For purposes of Section 505, "the term 'citizen' means a person or persons having an interest which is or may be adversely affected."

15.     Subject matter jurisdiction is further conferred upon this Court by RCRA § 7002(a)(1), 42 U.S.C. § 6972(a)(1), which states in part that, "...any person may commence a civil action on his own behalf (A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition requirement , prohibition or order which has become effective pursuant to this chapter, or (B) against any person ...who has contributed or who is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

16.     Members and supporters of RIVER WATCH reside in the vicinity of, derive livelihoods from, own property near, and/or recreate on, in or near and/or otherwise use, enjoy and benefit from the waterways and associated natural resources into which DEFENDANTS' discharge pollutants, or by which DEFENDANTS' operations adversely affect their interests, in violation of CWA § 301(a), 33 U.S.C.§1311(a), CWA § 505(a)(1),  33 U.S.C.§ 1365(a)(1), CWA § 402, 33 U.S.C.§ 1342 and RCRA § 7002 (a)(1)(B), 42 U.S.C. § 6972(a)(1)(B). The health, economic, recreational, aesthetic and environmental interests of RIVER WATCH and its members may be, have been, are being, and will continue to be adversely affected by DEFENDANTS' unlawful violations.  RIVER WATCH and its members contend there exists an injury in fact to them, causation of that injury by DEFENDANTS' complained of conduct herein, and a likelihood that the requested relief will redress that injury.

17.     Pursuant to CWA § 505(b)(1)(A), 33 U.S.C.§1365(b)(1)(A), notice of the CWA violations alleged in this Complaint was given  more than sixty (60) days prior to commencement of this lawsuit, to: (a) defendant City of Sausalito (b) the United States EPA, Federal and Regional, and (c) the State of California Water Resources Control Board.

18.      Pursuant to CWA § 505(c)(3), 33 U.S.C.  § 1365(c)(3), a copy of this Complaint has been served on the United States Attorney General and the Administrator of the Federal EPA.

19.      Pursuant to Section RCRA § 7002 (2)(A), 42 U.S.C. § 6972(2)(A), notice of the RCRA violations alleged in this Complaint was given more than ninety (90) days prior to the commencement of this lawsuit to: (a) defendant City of Sausalito, (b) the United States Environmental Protection Agency, Federal and Regional,(c) the State of California Water Resources Control Board, and (d) the State of California Integrated Waste Management Board.

20.      Pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), venue lies in this District as the sewage collection system facilities under DEFENDANTS' operation and/or control, and the sites where illegal discharges occurred, which are the source of the violations complained of in this action, are located within this District.

21.      Pursuant to RCRA § 7002(a)&(b), 42 U.S.C. §§ 6972(a)&(b) venue lies in this District as DEFENDANTS' sewage system collection facilities are located in this District. All of the sites of pollution are located in this District as well.

## IV.  GENERAL ALLEGATIONS

22.       RIVER WATCH   incorporates by reference all the foregoing including EXHIBITS A and B as though the same were separately set forth herein.

23.      DEFENDANTS own and operate a separate sanitary sewage collection system which collects sewage from approximately 6,200 connections servicing a population of approximately 7,454 in southern Marin County.  Sewage collected by DEFENDANTS' collection system is conveyed to the sewage collection system operated by SMCSD and thereafter conveyed to SMCSD's wastewater treatment plant. DEFENDANTS' sewer lines discharge pollutants both directly and indirectly into the waterways referenced below.

24.      All illegal discharges and activities complained of in this Complaint occur in the waterways named in the CWA NOTICE, all of which are waters of the United States, and at the locations identified in detail in the CWA NOTICE and the RCRA NOTICE.

25.      The Regional Water Quality Control Board  has determined that the watershed areas and affected waterways are beneficially used for drinking water, water contact recreation, non-contact water recreation, fresh water habitat, wildlife habitat, preservation of rare and endangered species, fish migration, fish spawning, industrial service supply, navigation, and sport fishing.

# V.  STATUTORY AND REGULATORY BACKGROUND

26.    CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a "point source" into the navigable waters of the United States, unless such discharge is in compliance with applicable effluent limitations as set by the EPA and the applicable State agency.   These limits are to be incorporated into a NPDES permit for that point source specifically. The effluent discharge standards or limitations specified in a NPDES Permit define the scope of the authorized exception to the 33 U.S.C. § 1311(a), such that violation of a permit limit places a polluter in violation of 33 U.S.C. § 1311(a) and thus in violation of the CWA. Additional sets of regulations are set forth in the Basin Plan, California Toxics Plan, the Code of Federal Regulations and other regulations promulgated by the EPA and the State Water Resources Control Board..  CWA § 301(a) prohibits discharges of pollutants or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342.  The sewage collection system facilities and sewer lines owned and operated by DEFENDANTS are point sources under the CWA.

27.    The affected waterways detailed in this Complaint and in the CWA NOTICE are navigable waters of the United States within the meaning of CWA §  502(7), 33 U.S.C. § 1362(7).

28.    The Administrator of the EPA has authorized the Regional Water Quality Control Board  to issue NPDES permits, subject to specified conditions and requirements, pursuant to CWA § 402, 33 U.S.C. § 1342.

29.    DEFENDANTS have no NPDES permit for discharging pollutants from their sewage collection system to waters of the United States. Without a NPDES Permit, all unauthorized point source discharges from DEFENDANTS' sewage collection system to waters of the United States are illegal. DEFENDANTS' sewer lines are a point source.  Discharges from this point source via surface overflows and tributary ground waters to waters of the United States, without a NPDES permit, are illegal.

30.    RCRA §  7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits an action against any person who violates a PERMIT, STANDARD or REGULATION pursuant to the RCRA.  DEFENDANTS have stored, handled and disposed of materials containing untreated sewage, defined as hazardous wastes under the RCRA, in a manner which has allowed these pollutants to be discharged to soil and

groundwater adjacent to DEFENDANTS' sewer collection system and sewer lines, in violation of regulations regarding the use and disposal of hazardous wastes. (RCRA § 3004 (d),   42 U.S.C. §6924(d)).

31.    RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) permits an action against any person who has contributed to or who is contributing to the past or present handling of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. The untreated sewage stored and conveyed in DEFENDANTS' sewage collection system consists of solid wastes and hazardous wastes pursuant to RCRA §6903(27), 42 U.S.C. § 6972(27), and RCRA § 6903(5), 42 U.S.C. § 6972 (5).  Pollutants from untreated sewage in DEFENDANTS' sewer lines have leached into soil and ground water adjacent to DEFENDANTS' sewer lines, creating an imminent and substantial endangerment to health and the environment.

## VI.  DEFENDANTS' VIOLATIONS

32.    DEFENDANTS' discharges of pollutants from their sewage collection system to waters of the United States without a NPDES Permit, as detailed in the CWA NOTICE  incorporated herein by reference as Exhibit A, are violations of CWA §301(a), 33 U.S.C. § 1311(a)  The violations are established in Regional Water Quality Control Board Files for DEFENDANTS' sewage collection system facilities, as well as in studies conducted by DEFENDANTS in compliance with orders from regulatory agencies .

33.    The enumerated violations are detailed in the CWA NOTICE, incorporated herein by reference, and below, designating the section of the CWA violated by the described activity.

34.    The location of the discharges are the discharges points as described in the CWA NOTICE, incorporated herein by reference.

35.    DEFENDANTS' discharges to soil and groundwater violate the RCRA's regulations regarding the storage and disposal of hazardous wastes. The violations are established in Regional Water Quality Control Board Files for DEFENDANTS' sewage collection system facilities, as well as in studies conducted by DEFENDANTS in compliance with orders from regulatory agencies

36.    DEFENDANTS' discharges to soil and ground water violate the RCRA's prohibition against creating an imminent and substantial endangerment to health and the environment.  The violations are

1  established in Regional Water Quality Control Board Files for DEFENDANTS' sewage collection

2  system, as well as in studies conducted by DEFENDANTS in compliance with orders from regulatory

3  agencies .

4  37.  The enumerated violations are detailed in the RCRA NOTICE incorporated herein by reference,

5  and below, designating the section of the RCRA violated by the described activity.

6  ## VII.  CLAIMS FOR RELIEF

7  ### A.  FIRST CLAIM FOR RELIEF

8  **Violation of CWA  33 U.S.C. §  1251 et seq., 33 U.S.C. § 1342 (a) and (b),  33 U.S.C. § 1311**

9  **Discharge of Pollutants from Point Sources to United States Waters Without a NPDES Permit**

10  38.  RIVER WATCH  realleges and incorporates by reference the allegations of Paragraphs 1

11  through 37 including EXHIBIT A as though fully set forth herein.

12  39.  DEFENDANTS have and continue to violate the CWA as evidenced by the discharges of

13  pollutants from a point source without a NPDES permit in violation of CWA § 301, 33 U.S.C. § 1311.

14  40.   RIVER WATCH contends the violations of DEFENDANTS alleged herein are ongoing and

15  will continue after the filing of this Complaint.  RIVER WATCH  alleges herein all violations which

16  may have occurred or will occur prior to trial, but for which data may not have been available or

17  submitted or apparent from the face of the reports or data submitted by DEFENDANTS to the Regional

18  Water Quality Control Board or to RIVER WATCH  prior to the filing of this Complaint.  RIVER

19  WATCH will file additional amended complaints if necessary to address DEFENDANTS' State and

20  Federal violations which may occur after the filing of this Complaint.  Each of DEFENDANTS'

21  violations is a  separate violation of the CWA.

22  41.  RIVER WATCH avers and believes and on such belief alleges that without the imposition of

23  appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue

24  to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and

25  releases.  RIVER WATCH  avers and believes and on such belief alleges that the relief requested in this

26  Complaint will redress the injury to RIVER WATCH and its members, prevent future injury, and protect

27  the their interests which are or may be adversely affected by DEFENDANTS' violations of the CWA,

28  as well as other State and Federal standards.

**B.   SECOND CLAIM FOR RELIEF**

**Violation of 42 U.S.C. § 6901 et seq., specifically 42 U.S.C.  § 6972(a)(1)(A)**

42.    RIVER WATCH  realloge  and incorporates by reference the allegations of Paragraphs 1 through 41 including EXHIBIT B as though fully set forth herein.

43.    RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits an action against any person who violates a PERMIT, STANDARD or REGULATION pursuant to the RCRA. Civil penalties may be assessed against any person or entity in violation of this section, under the provisions of 42 U.S.C. §§ 6928 (a) and (g).

44.    DEFENDANTS' storage and handling of untreated sewage at their sewage collection system facilities, defined as hazardous wastes under the RCRA, has caused the discharge of hazardous wastes to soil and groundwater in violation of regulations regarding the use and disposal of hazardous wastes. (RCRA §3004 (d),  42 U.S.C. §6924(d)).

45.    RIVER WATCH  avers and believes and on such belief alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate a PERMIT, STANDARD or REGULATION pursuant to the RCRA, specifically RCRA § 3004 (d),  42 U.S.C. §6924(d).

**C. THIRD CLAIM FOR RELIEF**

**Violation of 42 U.S.C. § 6901 et seq., specifically 42 U.S.C.  § 6972(a)(1)(B)**

46.    RIVER WATCH  realleges and incorporate by reference the allegations of Paragraphs 1 through 55 including EXHIBIT B as though fully set forth herein.

47.    RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action against any person or governmental entity including a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment.

48.    DEFENDANTS own and operate a sewage collection system in which they have stored and conveyed and from which they have discharged untreated sewage containing fecal coliform and other pollutants.

49.     DEFENDANTS have stored untreated sewage in a manner which has allowed it to leach pollutants into soil and ground water adjacent to DEFENDANTS' sewer lines.

50.     The pollutants listed above, are known to be hazardous to the environment and if released into the environment in sufficient quantity to pose an imminent and substantial risk.

51.     For purposes of the RCRA, untreated sewage is "solid waste" and " hazardous waste" within the meaning of the statute.

52.     RIVER WATCH is informed and believes, and thereon alleges that amounts of untreated sewage released by DEFENDANTS from their sewage collection system are in sufficient quantity to pose an imminent and substantial risk to both the environment and human health.

## VIII.  RELIEF REQUESTED

53.     Declare DEFENDANTS to have violated and to be in violation of the CWA;

54.     Issue an injunction ordering DEFENDANTS to immediately operate their sewage collection system in compliance with the CWA;

55.     Order DEFENDANTS to pay civil penalties of $27,500.00 per violation per day for their violations of the CWA;

56.     Declare DEFENDANTS to have violated and to be in violation of RCRA § 6972(a)(1)(A) for violation of a PERMIT, STANDARD or REGULATION regarding the storage and disposal of hazardous wastes, specifically RCRA § 3004 (d), 42 U.S.C. §6924(d);

57.     Enjoin DEFENDANTS from storing and disposing of hazardous wastes in their sewage collection system in a manner which violates RCRA §3004 (d), 42 U.S.C. §6924(d);

58.     Order DEFENDANTS to pay civil penalties of $25,000.00 per violation per day for their violations of RCRA § 6972(a)(1)(A);

59.     Declare DEFENDANTS to have violated and to be in violation of the RCRA for discharging toxic pollutants from their sewage collection system which are known human pathogens in sufficient quantity to pose an imminent and substantial risk to health;

60.     Enjoin DEFENDANTS from discharging toxic pollutants from their sewage collection system which toxins pose an imminent and substantial risk to health and the environment;

1  61.    Order DEFENDANTS to pay reasonable attorneys' fees and costs of RIVER WATCH (including

2  expert witness fees), as provided by 33 U.S.C. § 1365(d), 42 U.S.C.§ 6972(e) and applicable California

3  law; and,

4  62.    For such other and further relief as the court deems just and proper.

7  DATED:  April 14 , 2008

JERRY BERNHAUT
Attorney for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH,

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469    Santa Rosa, California 95402
Phone 707-528-8175    Fax 707-528-8675
lhm28843@sbcglobal.net


**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**


August 16, 2007


Pat Guasco, Sewer Coordinator
Community Development Department
City of Sausalito
420 Litho Street
Sausalito, CA 94965

**Re:    *Notice of Violations and Intent to File Suit Under the Clean Water Act***

Dear Mr. Guasco:

      The Clean Water Act ("CWA" or the "Act") § 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA § 505(a), 33 U.S.C. § 1365(a), a citizen must give notice of the intent to sue to the alleged violator, the Environmental Protection Agency ("EPA") and the State in which the violations occur. Private parties may bring citizens' suits pursuant to 33 U.S.C. § 1365 to enforce effluent standards or limitations, which are defined as including violations of 33 U.S.C. § 131l(a) and 33 U.S.C. § 1365(f)(1).

      Northern California River Watch ("River Watch") hereby places the City of Sausalito (hereafter "the City") on notice that following the expiration of sixty (60) days from the date of this NOTICE River Watch intends to bring suit in Federal District Court against the City for its continuing violations of "an effluent standard or limitation", permit condition or requirement and/or "an order issued by the Administrator or a State with respect to such standard or limitation" under §505(a)(1) of the Act, 33 U.S.C. §1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by the incidents of non-compliance listed below.

      The CWA regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharge of pollutants is prohibited with the exception of enumerated statutory exceptions. One such exception authorizes a polluter, who has been

issued a permit pursuant to CWA § 402, to discharge designated pollutants at certain levels subject to certain conditions. The City discharges pollutants to waters of the United States without a NPDES permit in direct violation of the Clean Water Act.

## BACKGROUND

The City collects residential and commercial sewage which it pumps to the treatment plant in Sausalito. The Sausalito-Marin City Sanitary District, (hereafter "SMCSD"), which owns and operates the treatment plant in Sausalito, has identified the City's collection system as a significant source of increased wet weather flows into the treatment plant because of the high level of inflow and infiltration ("I/I") of stormwater and groundwater into the City's sewer system. In particular, the SMCSD has identified high salinity I/I into the City's sewer system as a major source of saltwater intrusion into the SMCSD treatment plant, which the SMCSD identifies as a significant factor in causing total suspended solids and biological oxygen demand effluent limit violations. (see Excerpt from 2004 Annual Self-Monitoring Program Report, submitted with May 6, 2005 Comments to RWQCB on Treatment Plant Compliance Inspection Report).

The SMCSD has also recognized that much of the satellite system I/I impacting its treatment plant performance comes from residential privately-owned sewer laterals (see February 16, 2007 No Feasible Alternatives Analysis for Blending Peak Wet Weather Flows, p.10). I/I from the City and the two other satellite systems is also identified as causing wet weather flows in excess of the SMCSD's maximum wet weather design flow of 6.0 MGD. Flows in excess of 6.0 MGD are diverted from biological treatment units directly to secondary clarifiers, and then blended with fully treated effluent. Blending is permitted when no feasible alternative is available to prevent loss of life, personal injury, or severe property damage, 40 CFR 122.41(m)(4)(I). Blending is compromised treatment which should not occur with any regularity. From 2002 through 2006 the SMCSD blended an average of 7 times per year.

The structural defects in the City's collection system which allow I/I into the system result in a build-up of pressure which causes sewage system surface overflows. Overflows caused by blockages and I/I result in the discharge of raw sewage into adjacent waters, including San Francisco Bay, which are waters of the United States. Underground leakages caused by pipeline ruptures and other structural defects result in discharges to these adjacent surface waters via underground tributaries, preferential pathways and other conduits. Surface waters become contaminated with fecal coliform, exposing people to human pathogens. The City's chronic collection system failures pose a substantial threat to public health. The City's operation is not regulated under a NPDES Permit. The City is currently regulated under the Statewide General Waste Discharge Requirements For Sanitary Sewer Systems, Order No. 2006-003-DWQ (hereafter "Statewide WDR"), which was adopted on May 2, 2006. The Statewide WDR requires satellite systems to develop a Sewage System Management Plan,

(hereafter "SSMP") within a deadline of 51 months after the adoption of the WDR for satellite systems with populations under 2,500. The SSMP includes a system evaluation and maintenance plan, but the contemplated time lines for implementation of concrete measures are as long as 10 to 15 years into the future. The City's ongoing violations pose an immediate threat to public health and the environment, both from surface water impacts of surface overflows and underground leakage of untreated sewage, and from the impacts of I/1 on the SMCSD treatment system.

REMEDIAL MEASURES

River Watch believes the following remedial measures are necessary to bring the City into compliance with the CWA and to prioritize remedial measures to reflect the biological impacts of its ongoing non compliance:

1.    A reduction of collection system I/I through an aggressive collection system management, operation and maintenance ("CMOM") program, coordinated with the other satellite systems and the SMCSD collection system conveying wastewater to the SMCSD treatment plant, with clear time lines for prioritized repairs.

2.    A mandatory private sewer lateral inspection and repair program, triggered by sale of property or based on geographical, age and/or composition factors, possibly coordinated with repair of public sewer lines.

3.    Compliance with monitoring and reporting requirements, especially regarding all overflows which reach storm drains or discharge directly to state waters.

4.    Creation of web site capacity to receive private party reports of sewage overflows. Provide notification to all customers and other members of the public of the existence of the web based program, including a commitment to respond to private parties submitting overflow reports.

5.    Development of a source control program to limit the entry of fats, oil, grease and debris, which cause blockages, into the sewage collection system.

6.    Performance of human marker testing on surface waters adjacent to sewer lines to test for sewage contamination from underground exfiltration.

NOTICE

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify:

1.  *The specific standard, limitation, or order alleged to have been violated.*

To comply with this requirement River Watch has identified the City's collection system discharges of raw sewage to surface waters in violation of the CWA with regard to discharging a pollutant from a point source to waters of the United States without a NPDES permit, CWA § 301(a), 33 U.S.C. § 1311(a) and 33 U.S.C. § 1365(f).

2.  *The activity alleged to constitute a violation.*

River Watch has set forth narratives describing the discharges of raw sewage to surface waters as the activities leading to violations, and describes below with particularity specific incidents referenced in the City's own records and other public documents in the City's possession or otherwise available to the City, and incorporates by reference the records cited below from which descriptions of specific incidents were obtained.

3.  *The person or persons responsible for the alleged violation.*

The person or persons responsible for the alleged violations are the entities identified collectively as "the City" and those of its employees responsible for compliance with the applicable law.

4.  *The location of the alleged violation.*

The location or locations of the various violations are identified in records either created or maintained by or for the City, including the records cited below and the description of specific incidents referenced below.

5.  *The date or dates of violation or a reasonable range of dates during which the alleged activity occurred.*

River Watch has examined Regional Water Quality Control Board records for the period from December 1, 2004 to May 2, 2007. The range of dates covered by this NOTICE is from December 1, 2004 to May 2, 2007. River Watch will from time to time update this NOTICE to include all violations which occur after the range of dates currently covered by this NOTICE. Failure to obtain a NPDES permit, discharging without a NPDES permit, subsurface discharge due to leaking collection system in

areas in contact with waters of the United States are continuous violations and therefore each day constitutes a violation.

6.    *The full name, address, and telephone number of the person giving notice.*

The entity giving this NOTICE is Northern California River Watch, 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472. Tel. 707-824-4372.

Northern California River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California.

The violations of the City as set forth in this NOTICE affect the health and enjoyment of River Watch members who reside and recreate in the associated watershed.    Said members use this watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource is specifically impaired by the City's violations of the CWA.

VIOLATIONS

From December 1, 2004 to May 2, 2007, the City has violated the CWA, the Basin Plan and the Code of Federal Regulations for discharging pollutants to waters of the United States from its collection system without a NPDES permit. Said violations are reported by City staff to and evidenced by the San Francisco Bay Water Board SSO Reporting Program Database Records. Furthermore these violations are continuing.

| Violations | Description |
|---|---|
| 900 | Collection system overflows caused by underground exfiltration. This occurs when untreated sewage is discharged from the collection system prior to the untreated sewage reaching the treatment plant. Underground discharges are alleged to have been continuous throughout the 30 month period from December 1, 2004 to May 2, 2007. Evidence to support the allegations of underground discharge of raw sewage exists in the City's own mass balance data regarding the number of connections in the service area, estimates of average daily volume of wastewater per connection, influent flow volumes to the treatment plant reported in the SMCSD's DMRs, video inspection of the collection system, and testing of waterways adjacent to sewer lines, including creeks, wetlands and Richardson Bay, for nutrients, pathogens and other constituents indicating sewage contamination, such as caffeine. |

50      Sewage system overflows as evidenced in San Francisco Bay Water Board SSO Reporting Program Database Records (from December 1, 2004 to May 2, 2007), including the overflow of 900 gallons which occurred on June 23, 2006 on the beach at the intersection of Bridgeway and Valley and discharged directly into San Francisco Bay. Also, unrecorded overflows witnessed by local residents.

CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Offices of Jack Silver
Jerry Bernhaut, Esquire
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax. 707-528-8675

CONCLUSION

River Watch believes this NOTICE sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter, River Watch intends to file a citizen's suit under § 505(a) of the CWA against the City for the violations identified in this NOTICE.

During the 60-day notice period, River Watch is willing to discuss effective remedies for the violations noted in this NOTICE. However, if the City wishes to pursue such discussions in the absence of litigation, it is suggested that those discussions be initiated within the next thirty (30) days so that they may be completed before the end of the 60-day notice period. River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when the notice period ends.

Very truly yours,

Jerry Bernhaut

cc:
Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N. W.
Mail Code 3213A
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
US. Environmental Protection Agency Region 9
75 Hawthorne St.
San Francisco, CA 94105

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-100

City Attorney and
City Council
City of Sausalito
420 Litho Street
Sausalito, CA 94965

Northern California River Watch
6741 Sebastopol Avenue, Suite 140
Sebastopol, CA 95472

# EXHIBIT B

# Law Office of Jack Silver



P.O. Box 5469      Santa Rosa, California 95402
Phone 707-528-8175    Fax 707-528-8675
lhm28843@sbcglobal.net

**VIA REGISTERED MAIL**
**RETURN RECEIPT REQUESTED**

August 20, 2007

Pat Guasco, Sewer Coordinator
Community Development Department
City of Sausalito
420 Litho Street
Sausalito, CA 94965

*Re:    Notice of Violations and Intent to File Suit under the Resource
        Conservation and Recovery Act*

Dear Mr. Guasco:

   The Federal Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6901 et seq., requires that sixty days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under RCRA, a private party must give notice of the violation to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred. If the violator is a State or local agency, service of notice shall be accomplished by registered mail addressed to, or by personal service upon, the head of such agency. If the alleged violator is an individual or corporation, service of notice shall be accomplished by registered mail addressed to, or by personal service upon, the owner or site manager ,with a copy sent to the registered agent of the corporation. 42 U.S.C. § 6972(b)(1)(A).

   RCRA also requires that a private party provide ninety (90) days prior notice to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment. 42 U.S.C.§ 6972(b)(2)(A).

On behalf of Northern California River Watch I am providing statutory notification to the City of Sausalito (hereafter "the City"), of the City's continuing and ongoing violations of RCRA in the operation of its sewage collection system.

NOTICE

Under RCRA, Notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under RCRA, shall include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the full name, address, and telephone number of the person giving notice. River Watch therefore provides the following information:

*1.    The specific standard, limitation, or order alleged to have been violated.*

RCRA, enacted in 1976, is a Federal law of the United States contained in 42 U.S.C. §§ 6901-6992. RCRA's goals are to protect the public from harm caused by waste disposal; to encourage reuse, reduction, and recycling; and, to clean up spilled or improperly stored wastes.

The Environmental Protection Agency's ("EPA") waste management regulations are codified at 40 C.F.R. §§ 239-282. Regulations regarding management of hazardous waste begin at 40 C.F.R. § 260. California has enacted laws and promulgated regulations that are at least as stringent as the federal regulations.

The City's collection, storage and conveyance of commercial and residential wastewater in the operation of its wastewater collection system, as identified in this NOTICE, has and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to RCRA regarding hazardous waste. [42 U.S.C. § 6972(a)(1)(A)].

The City's operation of its wastewater collection system, as identified in this NOTICE, has caused contamination of soil, surface and groundwaters in residential areas which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

*2.    The Activity Alleged to Constitute a Violation*

To comply with this requirement River Watch has set forth below narratives describing with particularity the activities leading to violations. In summary RCRA requires that the environment and public be protected from the hazardous wastes, in the form of

human residential waste and commercial waste, such as that discharged by the City. The pollutants, including coliform bacteria and other pathogens, discharged from the City's collection system as identified in this NOTICE, constitute hazardous waste under RCRA, and are required to be properly managed so as not to cause harm and endangerment to the public or the environment. RCRA specifically protects groundwater.

The liability of the City stems from its ownership and operation of its wastewater collection system, which violates RCRA and has contributed to the past or present handling, storage, transportation, or disposal of any hazardous waste which may present an imminent and substantial endangerment to health or the environment. By allowing its sewage collection system to deteriorate and develop structural defects, such as corrosion, ruptures and misaligned joints which allow the infiltration of rainwater and the exfiltration of untreated waste, the City has caused pollutants to be discharged to ground and surface waters.

3.    *The discharger responsible for the alleged violation.*

The discharger responsible for the alleged violations are is the City of Sausalito, referred to as the City throughout this NOTICE, and those of its employees responsible for compliance with the applicable law.

4.    *The location of the alleged violation.*

The location or locations of the various violations are identified in the BACKGROUND section and narratives in this NOTICE and in records either created or maintained by or for the City which relate to the City's operation of its sewage collection system, including the records cited below and the description of specific incidents referenced below.

5.    *The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.*

River Watch has examined Regional Water Quality Control Board ("RWQCB") records for the period from December 1, 2004 to May 2, 2007. The range of dates covered by this NOTICE is from December 1, 2004 to May 2, 2007. River Watch will from time to time update this NOTICE to include all violations which occur after the range of dates currently covered by this NOTICE. The violations identified in this NOTICE such as discharging pollutants to groundwater and surface waters, failure to obtain RCRA permits, failure to implement the requirements of RCRA, failure to meet water quality objectives, etc., are continuous. Therefore each day is a violation. River Watch believes all violations set forth in this NOTICE are continuing in nature or will likely continue after the filing of a

lawsuit. Specific dates of violations are evidenced in the City's own records (or lack thereof) or files and records of other regulatory agencies including the RWQCB.

6.   *The full name, address, and telephone number of the person giving notice.*

The entity giving this Notice is Northern California River Watch, a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California. Its address is 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA, 95472. Telephone 707-824-4372.

BACKGROUND

The City collects residential and commercial sewage which it pumps to the treatment plant in Sausalito owned and operated by the Sausalito-Marin City Sanitary District, (hereafter "SMCSD"). SMCSD has identified the City's collection system as a significant source of increased wet weather flows into the treatment plant because of the high level of inflow and infiltration ("I/I") of stormwater and groundwater into the City's system. In particular, the SMCSD has identified high salinity I/I into the City's system as a major source of saltwater intrusion into the SMCSD treatment plant, which the SMCSD identifies as a significant factor in causing total suspended solids and biological oxygen demand effluent limit violations. (see Excerpt from 2004 Annual Self-Monitoring Program Report, submitted with May 6, 2005 Comments to RWQCB on Treatment Plant Compliance Inspection Report).

The structural defects in the City's collection system which allow I/I into the system result in a build-up of pressure which causes sewage system surface overflows. Overflows caused by blockages and I/I result in the discharge of raw sewage into adjacent waters, including San Francisco Bay, which are waters of the U.S.. Sewage system overflows are evidenced in San Francisco Bay Water Board SSO Reporting Program Database Records (from December 1, 2004 to May 2, 2007), including the overflow of 900 gallons which occurred on June 23, 2006 on the beach at the intersection of Bridgeway and Valley and discharged directly into San Francisco Bay. Additionally, there are unrecorded overflows witnessed by local residents.

Underground leakages caused by pipeline ruptures and other structural defects result in discharges to adjacent surface waters via underground tributaries, preferential pathways and other conduits. Surface waters become contaminated with fecal coliform, exposing people to human pathogens. The City's chronic collection system failures pose a substantial threat to public health. The City's ongoing violations pose an immediate threat to public health and the environment, both from surface water impacts of surface overflows and underground leakage of untreated sewage, polluting both surface and groundwater.

## CONTINUING VIOLATIONS

RWQCB records indicate that structural defects in the City's collection system are an ongoing source of I/I into the SMCSD treatment plant. These same defects continue to allow exfiltration of untreated sewage into the soil and groundwater. The City is currently regulated under the Statewide General Waste Discharge Requirements For Sanitary Sewer Systems, Order No. 2006-003-DWQ (hereafter "Statewide WDR"), which was adopted on May 2, 2006. The Statewide WDR requires satellite systems to develop a Sewage System Management Plan, (hereafter "SSMP") within a deadline of 51 months after adoption of the WDR, for satellite systems with populations under 2,500. The SSMP includes a system evaluation and maintenance plan, but the contemplated time lines for implementation of concrete measures are as long as 10 to 15 years into the future. The City's ongoing violations pose an immediate threat to public health and the environment. River Watch believes an aggressive collection system management, operation and maintenance ("CMOM") program, with prioritized repairs based on human marker testing of waters adjacent to sewer lines, is necessary to avoid further RCRA violations by the City.

## REGULATORY STANDARDS

The RWQCB has adopted Maximum Contaminant Levels ("MCLs") and/or Water Quality Objectives ("WQOs") for constituents in surface and groundwater within the region to ensure protection of the beneficial uses of water.   Several beneficial uses of water exist, and the most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions need to be considered which evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels.  Existing and potential beneficial uses of area groundwater include domestic, agricultural, industrial and municipal water supply.

The RWQCB has also adopted a Water Quality Control Plan or "Basin Plan", which designates all surface and groundwater within the Bay Area regions as capable of supporting domestic water supply.

Sewage has been characterized as "hazardous waste" and "solid waste" within the meaning of RCRA provisions.  Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of sewage.

## VIOLATIONS

Between December 1, 2004 and May 2, 2007, ongoing violations of RCRA by the City as described herein have occurred.  The City has caused or permitted, causes or permits,

or threatens to cause or permit hazardous waste to be discharged into waters of the State and now creates, or threatens to create, a condition of pollution or nuisance. The discharge and threatened discharge of such waste is deleterious to the beneficial uses of water, and is creating and threatens to create a condition of pollution and nuisance which will continue unless the discharge and threatened discharge is permanently abated.

Past or current violations of RCRA authorize the assessment of civil penalties. The enforcement provisions of 42 U.S.C. §§ 6928(a) and 6928(g) provide for penalties when conditions of hazardous waste disposal have been alleged - as River Watch has alleged in this Notice with respect to the City's sewage collection system. Accordingly, under these provisions, persons or entities violating RCRA are subject to substantial liability to the United States on a per-day basis.

The City's storage and conveyance of sewage wastes in its sewage collection system between December 1, 2004 to May 2, 2007 has allowed significant quantities of hazardous constituents to be released or discharged into soil and groundwater in violation of provisions of the RCRA and California hazardous waste regulatory programs. The violations of RCRA alleged in this NOTICE are knowing and intentional in that the City in the past has stored and conveyed hazardous substances, in the form of untreated sewage, in pipelines which City staff knew to be damaged to the extent that they were unable to contain the sewage and avoid leakage into soil and ground water. City staff have known of the contamination of soil and ground water since at least 2000, and have also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to its sewer pipelines, and to continually contaminate and re-contaminate actual and potential sources of drinking water in addition to surface waters.

The City has collected, treated and stored industrial and domestic waste in a manner which has allowed significant quantities of pollutants to be discharged to soil and groundwater beneath its facilities and beneath adjacent properties where its collection system is located. These pollutants are known to harm both plants and animals. These pollutants are creating an imminent and substantial endangerment to public health and the environment.

Violations of RCRA of the type alleged herein are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of California. With every discharge, groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

## VIOLATIONS OF PERMITS, STANDARDS AND REGULATIONS
42 U.S.C. § 6972(a)(1)(A)

Provisions of RCRA apply to the use and operation of waste disposal facilities including domestic sewage when such facilities are not already covered by a CWA § 402 permit. The City has no RCRA permit for the disposal, storage or use of hazardous or solid waste.

## IMMINENT AND SUBSTANTIAL ENDANGERMENT
42 U.S.C. § 6972(a)(1)(B)

The City's discharges have contaminated surface and groundwaters in a manner that adversely affects the beneficial uses of these waters, exceed MCLs and WQOs and in general create imminent and substantial endangerment to the health and safety of the public and to the environment.

In addition to the violations set forth above, this NOTICE is intended to cover all violations of RCRA evidenced by information which become available to River Watch after the date of this NOTICE, and seeks all penalties and other enforcement provisions related to such violations.

The violations of the City as set forth in this NOTICE affect the health and enjoyment of members of River Watch who reside, work and recreate in the affected area and use this watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Their health, property rights, use and enjoyment of this area is specifically impaired by the City's violations of RCRA.

## CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Offices of Jack Silver
Jerry Bernhaut, Esquire
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax. 707-528-8675

CONCLUSION

River Watch believe this NOTICE sufficiently states the grounds for filing suit under the statutory and regulatory provisions of RCRA.  At the close of the notice periods or shortly thereafter, River Watch intends to file suit against the City under the provisions of RCRA for each of the violations alleged herein.

During the 90-day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced.  If the City wishes to pursue such discussions in the absence of litigation, please do so immediately so that we might be on track to resolving these before the end of the notice period.  River Watch will not delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours,

Jerry Bernhaut

cc:
Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental  Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Dorothy R. Rice,  Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California  95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 "I" Street
Sacramento, CA 95814

City Attorney and City Council
City of Sausalito
420 Litho Street
Sausalito, CA 94965