Jack Silver, Esq. (STATE BAR NO. 160575)
Jerry Bernhaut, Esq. (STATE BAR N0. 206264)
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel.   (707) 528-8175
Fax.   (707) 528-8675
lhm28843@sbcglobal.net

Attorneys for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

STUART I. BLOCK (STATE BAR NO. 160688)
ROBERT P. DOTY (STATE BAR NO. 148069)
COX, CASTLE & NICHOLSON LLP
555 California Street
10th Floor
San Francisco, CA  94104-1513
Telephone:  (415) 392-4200
Facsimile:  (415) 392-4250

Attorneys for Defendant
CITY OF SAUSALITO

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAUSALITO, and DOES 1-10, inclusive,<br><br>Defendant. | Case No.  **C08-01966 SC**<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>**Date:** July 25, 2008<br>**Time:** 10:00 a.m.<br>**Ctrm:** 1, 17th Floor<br>**Judge:** Honorable Samuel Conti |

Plaintiff NORTHERN CALIFORNIA RIVER WATCH ("Plaintiff") and Defendant CITY OF SAUSALITO ("City"), in accordance with Civil Local Rule 16-9, submit this Joint Case Management Statement.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
SAN FRANCISCO, CA

**C08-01966 SC**
**JOINT CASE MANAGEMENT STATEMENT**
- 1 -

1. **Jurisdiction and Service.**

Plaintiff claims that subject matter jurisdiction is conferred upon this Court by Clean Water Act (CWA) § 505(a), 33 U.S.C. §1365(a), and by Resource Conservation and Recovery Act (RCRA) § 7002(a)(1), 42 U.S.C. § 6972(a)(1). Service upon the City has been completed. No Doe defendants have been identified or served.

2. **Brief Chronology of the Facts and Statement of Factual Issues in Dispute**

   A. **Chronology**

The City owns and operates a sanitary sewer collection system that collects residential and commercial sewage and conveys that material to a second collection system. The second collection system is owned and operated by the Sausalito-Marin City Sanitary District ("SMCSD" or "District"). The District also owns and operates a wastewater treatment plant at which sewage from both collection systems (as well as sewage from other collection systems) is treated and discharged pursuant to permit issued by the California Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board").

In November 2004, the Regional Board notified sewer system operators within its region of new requirements for reporting sanitary sewer overflows. The City has submitted reports pursuant to those requirements.

In May 2006, the California State Water Resources Control Board ("State Board") adopted a statewide order addressing, among other things, reporting requirements for sanitary sewer overflows and submission of Sewage System Management Plans ("SSMP"). The City has submitted an SSMP, but Plaintiff alleges in the complaint that the City's plan is deficient because the deadlines for implementation are in some cases as long as 10 to 15 years into the future

In September 2006 the Regional Board notified system operators to conform their sanitary sewer overflow reporting to requirements set forth in the State Board's May 2006 order. The City has filed reports of sanitary sewer overflows with state agencies pursuant to their directives.

In August 2007, and in again in October 2007, the United States Environmental Protection Agency ("EPA") conducted inspections of the sewage collection systems operated by the City, the District, and other collection systems that deliver sewage to the District.

On August 16, 2007, Plaintiff served (by certified mail) a "Notice of Violation and Intent To File Suit Under the Clean Water Act" on the City. The Notice refers to (1) 50 alleged sanitary sewer overflow violations based on reports filed with the Regional Board and "unrecorded overflows" allegedly "witnessed by local residents" and (2) 900 overflows alleged to result from "underground exfiltration" from sewer pipes.

On August 20, 2007, Plaintiff served (by certified mail) a "Notice of Violations and Intent to File Suite under the Resource Conservation and Recovery Act" on the City. Plaintiff's RCRA notice (1) alleges violations of "permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to RCRA regarding hazardous waste" and (2) further alleges that the City's collection system creates an "imminent and substantial endangerment to human health and the environment."

On April 10, 2008, EPA issued a "Findings of Violation and Order For Compliance" to the City, the District, and another collection system operator that conveys sewage to the District. EPA's April 2008 Order requires the City, the District, and the collection system operator to work cooperatively on development and implementation of a Sewage Spill Reduction Action Plan consisting of the following principle elements: (1) elimination of collection system spills; (2) spill response, recordkeeping, notification, and reporting; (3) collection system maintenance and management; (4) collection system assessments; (5) capacity assurance plans; (6) short-and long-term infrastructure renewal/replacement plans; and (6) various reports. The initial deliverables under the Order are due October 15, 2008, with implementation occurring over the next five years (but pursuant to 10-year capital budgets). Plaintiff contends that the EPA's Order mandates inadequate remedial measures and fails to require the City to implement a "supplemental environmental project" that reduces the inflow of rainwater and groundwater into the City's collection system.

Plaintiff filed this action on April 15, 2008. Plaintiff's complaint includes one count under the Clean Water Act and two counts under the Resource Conservation and Recovery Act. Plaintiff seeks declaratory and injunctive relief, civil penalties in excess of $50,000 per day, and attorneys' fees.

**B.     Principal Factual Issues In Dispute**

1. Whether Plaintiff can establish any Clean Water Act violations (other than any violations already self-reported by the City in its submissions to state agencies).

2. Whether Plaintiff can establish that the sewage handled by the City's system is a "hazardous waste" within the meaning of the Resource Conservation and Recovery Act and EPA's regulations implementing that act.

3. Whether Plaintiff can establish that sewage that may leak from the City's collection system is (1) a "solid waste" within the meaning of the Resource Conservation and Recovery Act that (2) has been disposed of in a fashion creating an "imminent and substantial endangerment to health or the environment" within the meaning of the Resource Conservation and Recovery Act.

**3.     Legal Issues**

(a) Whether, as Plaintiff contends, the City's collection system must either (1) have no leakage whatsoever; (2) have its own discharge permit from the Regional Board and issued pursuant to the National Pollution Discharge Elimination System (NPDES) program provided for in Section 402 of the Clean Water Act, 33 U.S.C. § 1342; or (3) be covered under the District's permit. Plaintiff contends an NPDES permit is required by the terms of 33 U.S.C. §§ 1311(a), 1342, and 1362(7) and is aware of a current trend wherein collection system operators conveying waste water to a treatment plant are named as parties under the treatment plant's NPDES permit. The City is not presently aware of any case authority or regulation imposing any NPDES permit requirement on collection systems, and no such requirement is stated in EPA's April 2008 Order.

(b) Whether, as Plaintiff contends, "exfiltration" and other leakage of wastewater from a sewage collection system and into groundwater that may migrate into waters of the United States constitutes the discharge of a pollutant to "navigable waters" within the meaning of Sections 301 and 502 of the Clean Water Act. The issue of whether waters not navigable in fact are regulated under the Clean Water Act was most recently addressed by the Supreme Court in Rapanos v. United States, 547 U.S. 715, 127 S. Ct. 2208 (2006), and the issue of whether groundwater is regulated under the Clean Water Act has been addressed with mixed holdings by the lower courts.

(c)     Whether, as Plaintiff contends, the sewage handled by the City's collection system is a "hazardous waste" and subject to the prohibition on land disposal of certain hazardous wastes provided in 42 U.S.C. § 6924(d). The City is not presently aware of any case authority or regulation establishing that proposition; Plaintiff contends sewage is a hazardous waste under 42 U.S.C.§ 6903(5)(B).

(d)     Whether, as Plaintiff contends, wastewater that has escaped or may in the future escape from the City's collection system constitutes disposal of a "solid" waste that creates an "imminent and substantial endangerment to health or the environment" within the meaning of 42 U.S.C. §6972(a)(1)(B). The City is not presently aware of any case authority or regulation establishing that proposition.

**4.    Motions.**

No motions have been filed to date. The parties anticipate filing cross motions for partial summary judgment or summary adjudication as to liability.

**5.    Amendment of Pleadings.**

Plaintiff anticipates amending its Complaint after initial discovery in order to update the pleadings and incorporate any additional notices filed.

**6.    Evidence Preservation.**

No evidence preservation issues are anticipated.

**7.    Disclosures.**

The parties will comply with the initial disclosure requirements of Fed.R.Civ.P. Rule 26 (f).

**8.    Discovery Plan.**

(a)     There has been no discovery to date. By the time of filing of this Joint Case Management Statement, the parties will have met and conferred to organize the exchange of information required by Fed.R.Civ.P. Rule 26(f). The parties have agreed to comply with the timing, form and other requirements of Rule 26(a).

(b)     Plaintiff contends that because this is a Clean Water Act and Resource Conservation and Recovery Act case concerning surface overflows and underground migration of pollutants, a portion of Plaintiff's case may depend upon the collection of evidence during storm events and after

higher groundwater elevations due to seasonal rains. A review of weather patterns during the past five years reveals that highest flows have occurred between early January and late February. Therefore, plaintiff requests that non-expert discovery remain open through March 2009. Plaintiff contends that this Court and others have granted similar requests in the interest of obtaining the most accurate and complete version of the material facts.

(c) The City does not understand how Plaintiff can take this position inasmuch as the Complaint alleges, without qualification or reservation, that violations of both statutes have been "routine" (*e.g.,* Complaint at 2:3 (CWA violations); *id.* at 3:8 (RCRA violations)). The City is not aware of any case authority for the proposition that citizen suits pursuant to these statutes are subject to special timing rules such that discovery and trial dates are set based on weather cycles.

**9.   Class Actions.**

This is not a class action.

**10.   Related Cases.**

None known.

**11.   Relief Sought.**

Plaintiff's request declaratory and injunctive relief, civil penalties, and attorneys' fees.

**12.   Settlement and ADR.**

The parties have already engaged in settlement discussions, and based on those discussions it appears to the City that Plaintiff's demand for attorneys' fees may well be the biggest impediment to settlement. Plaintiff is demanding $60,000 as compensation for work to date and "compliance monitoring" that Plaintiff expects to do over the five-year implementation period called for in the April 2008 EPA Order.

The City contends that inasmuch as the City is subject to the EPA Order and other orders issued by state regulators, inasmuch as EPA issued its April 2008 Order before this Action was filed, and inasmuch as EPA was already conducting investigations and inspections when Plaintiff issued its summer 2007 notice/intent to sue letters, this is a case in which the Plaintiff's legal action has not made any substantial contribution toward the City's compliance with the statutes in question. Discovery directed at the extent of Plaintiff's fees to date, and a motion directed to whether any

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
SAN FRANCISCO, CA

**C08-01966 SC
JOINT CASE MANAGEMENT STATEMENT**                - 6 -

1  substantial fee award is warranted given the facts of this case, might facilitate settlement.  Resolution
2  of certain of the legal issues noted in Section 3 might also facilitate settlement, but none of these
3  issues presently appear to be major sticking points.

4  Plaintiff contends that members of River Watch alerted Plaintiff of sewage overflows,
5  treatment plant odors and other problems well in advance of any action by the EPA.  Plaintiff further
6  contends that upon investigation by River Watch staff it was disclosed that structural defects in the
7  City's collection system, in addition to allowing underground leakage of raw sewage to ground water,
8  also allowed massive inflow of rain water and ground water to the collection system, resulting in
9  surface overflows and contributing to a history of effluent limit violations by the treatment plant
10 operator.  Plaintiff also contends that in the course of its negotiations with the City and other local
11 sewer agencies, Plaintiff had made progress towards facilitating cooperation among the agencies, prior
12 to the issuance of the EPA Order.  Plaintiff continues to pursue remedial measures not required by the
13 Order, such as an effective program to address private sewer lateral repair and assessment of
14 underground exfiltration, necessary in Plaintiff's view to protect public health and the environment.
15 Based on extensive experience with lax compliance and the habit of regulatory agencies of granting
16 numerous extensions, Plaintiff contends that it has a crucial role in monitoring timely compliance with
17 remedial measures.

**13.  Consent to Magistrate.**

The City does not consent to a magistrate.

**14.  Other References.**

As noted above, the principal impediment to settlement appears to be Plaintiff's claim for attorneys' fees.  The referenced proceedings are not well suited to that issue.

**15.  Narrowing of Issues.**

None known at the present time apart from the fee issue noted above.

**16.  Expedited Schedule.**

The parties do not request an expedited schedule.

**17.  Scheduling.**

Plaintiff proposes the following schedule:

1   (a)  Experts: no later than 90 days before trial, per Fed.R.Civ.P. Rule 26 (a)(2)

2   (b)  Discovery Cut-off:  Please see 8(e) above for the proposed discovery schedule

3   (c)  Dispositive Motions: Last day to file dispositive motions:  July 1, 2009

4   (d)  Pretrial Conference:  September 14, 2009

5   (e)  Trial:  September 28, 2009

6   The City proposes the following schedule:

7   (a)  Discovery Cut-off:  January 12, 2009

8   (b)  Dispositive Motions: Last day to file dispositive motions:  February 7, 2009

9   (c)  Pretrial Conference:  May 4, 2009

10  (d)  Trial:  May 19, 2009

**18.  Trial**

The Parties do not request a jury trial. The Parties expect the trial to last 5-10 court days.

**19.  Disclosure of Non-Party Interested Entities Or Persons.**

Plaintiff has filed the required Certification of Interested Entities or Persons required by Civil Local Rule 3-16.  Plaintiff has certified that there are no other interested persons or entities.

Dated:  July 18, 2008

/s/ Jerry Bernhaut
_____
JERRY BERNHAUT
Attorney for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

Dated:  July 18, 2008

/s/ Stuart I. Block
_____
STUART I. BLOCK
Attorney for Defendant
CITY OF SAUSALITO

99999\124817v2

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
SAN FRANCISCO, CA

C08-01966 SC
JOINT CASE MANAGEMENT STATEMENT

- 8 -