1  Jack Silver, Esq. SBN  160575
2  Jerry Bernhaut, Esq. SBN 206264
   Law Office of Jack Silver
3  Post Office Box 5469
   Santa Rosa, CA 95402-5469
4  Tel.    (707) 528-8175
   Fax.    (707) 528-8675
5  lhm28843@sbcglobal.net

6  Attorneys for PLAINTIFF
   NORTHERN CALIFORNIA RIVER WATCH
7

8  ROBERT P. DOTY (SBN: 148069)
9  STUART I. BLOCK (SBN: 160688)
   COX, CASTLE & NICHOLSON LLP
10 555 California Street, 10th Floor
   San Francisco, CA 94104-1513
11 Tel. (415) 392-4200
   Fax. (415) 392-4250
12 rdoty@coxcastle.com
   sblock@coxcastle.com
13

14 Attorneys for DEFENDANT
   CITY OF SAUSALITO
15

16
                    UNITED STATES DISTRICT COURT
17
                   NORTHERN  DISTRICT OF CALIFORNIA
18

19 NORTHERN CALIFORNIA RIVER          CASE NO.:   C08-01966 SC
20 WATCH, a non-profit Corporation,
                                      **STIPULATION OF DISMISSAL WITH**
21         Plaintiff,                 **PREJUDICE; [PROPOSED] ORDER**
   v.                                 **[FRCP § 41(a)(1)]**
22
   CITY OF SAUSALITO and DOES
23 1 - 10, Inclusive,
                                      (Pretrial Conference:   May 15, 2009)
24         Defendants.
25 _____/

26 //

27 //

28

   C08-01966 SC
   Stipulation of Dismissal With Prejudice [Proposed] Order                    1

1   WHEREAS the parties reached an agreement at Mediation on October 8, 2008 to settle all of

2   their disputes with respect to this action, the terms of settlement being incorporated into a Settlement

3
4   Agreement and Mutual Release of Claims executed by the parties on December 3, 2008 and attached

5   to this Stipulation as Exhibit A.

6   THEREFORE, IT IS HEREBY STIPULATED by and between plaintiff NORTHERN

7   CALIFORNIA RIVER WATCH and defendant CITY OF SAUSALITO, pursuant to FRCP § 41(a)(1),

8
9   by and through their counsel of record, that this matter may be dismissed with prejudice, each party

10   hereto waiving its right to recover costs and attorney's fees except as set forth in Paragraph VII of said

11   Settlement Agreement.

12   IT IS HEREBY FURTHER STIPULATED between the parties that this Court shall retain

13   jurisdiction to hear any disputes reviewable in federal court arising from their settlement, in accordance

14
15   with the enforcement provisions set forth in Paragraph X.A. of said Settlement Agreement.

16   Dated: January        , 2009        _____

17                                      JERRY BERNHAUT
18                                      Attorney for Plaintiff
                                        NORTHERN CALIFORNIA RIVER WATCH
19

20   Dated: January 21, 2009            _____
                                        ROBERT P. DOTY
21                                      Attorney for Defendant
22                                      CITY OF SAUSALITO

23
                                        **ORDER**
24

25   PURSUAT TO SAID STIPULATION, IT IS SO ORDERED.

26   DATED: January 22, 2009            _____

27                                      SAMUEL CONTI, DISER
                                        UNITED STATES DISTRI
28

C08-01966 SC
Stipulation of Dismissal With Prejudice [Proposed] Order                              2

1    WHEREAS the parties reached an agreement at Mediation on October 8, 2008 to settle all of

2 their disputes with respect to this action, the terms of settlement being incorporated into a Settlement

3 Agreement and Mutual Release of Claims executed by the parties on December 3, 2008 and attached

4

5 to this Stipulation as Exhibit A.

6    THEREFORE, IT IS HEREBY STIPULATED by and between plaintiff NORTHERN

7 CALIFORNIA RIVER WATCH and defendant CITY OF SAUSALITO, pursuant to FRCP § 41(a)(1),

8 by and through their counsel of record, that this matter may be dismissed with prejudice, each party

9
hereto waiving its right to recover costs and attorney's fees except as set forth in Paragraph VII of said
10

11 Settlement Agreement.

12    IT IS HEREBY FURTHER STIPULATED between the parties that this Court shall retain

13 jurisdiction to hear any disputes reviewable in federal court arising from their settlement, in accordance

14
with the enforcement provisions set forth in Paragraph X.A. of said Settlement Agreement.
15

16 Dated: January 21, 2009

17                                  JERRY BERNHAUT
                                    Attorney for Plaintiff
18                                  NORTHERN CALIFORNIA RIVER WATCH

19

20 Dated: January ____, 2009

21                                  ROBERT P. DOTY
                                    Attorney for Defendant
22                                  CITY OF SAUSALITO

23                                  **ORDER**

24

25    PURSUANT TO SAID STIPULATION, IT IS SO ORDERED.

26 DATED: _____

27                                  SAMUEL CONTI, DISTRICT JUDGE
                                    UNITED STATES DISTRICT COURT

28

C08-01966 SC
Stipulation of Dismissal With Prejudice [Proposed] Order                    2

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("Agreement") is entered into between Northern California River Watch ("River Watch") and the City Of Sausalito ("The City") (collectively "the Parties") as of the last date executed below (the "Effective Date"), with respect to the following facts and objectives.

## RECITALS

A.      River Watch is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement and restoration of the rivers, creeks, streams, tributaries and groundwater of Northern California.

B.      The City is a public agency organized under Part 1, Division 2, Government Code Section 53000 *et seq*. The City's wastewater collection system operates under the Statewide General Waste Discharge Requirements For Wastewater Collection System Agencies.

C.      On August 16, 2007 River Watch sent the City a Notice of Violations and Intent to File Suit ("60 Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1365, a copy of which is attached hereto as Exhibit A.  On August 20, 2007 River Watch sent the City a Notice of Violations and Intent to File Suit ("90 Day Notice Letter") under Section 7002 of the Federal Resource Conservation And Recovery Act ("RCRA") 42 U.S.C. §6972, a copy of which is attached as Exhibit B.

D.      On October 5, 2007, the Parties met for an initial settlement conference, together with the Sausalito-Marin City Sanitary District ("District"), Tamalpais Community Services District ("TCSD") and the Golden Gate National Park Service, each of which is an independent Sanitary Sewer Collection System Agency whose wastewater flow is conveyed to and treated by the District.  Each of these independent Agencies was also served with a 60 Day Notice Letter from River Watch.  River Watch has settled its claims against the District and TCSD.

E.      On April 15, 2008, River Watch filed a Clean Water Act and RCRA Complaint (the "Complaint") against the City in Federal District Court for the Northern District of California. A copy of the Complaint is attached as Exhibit C.

F.      The City, TCSD and the District operate independent sanitary sewer collection systems that convey sewage to a sewage treatment plant operated by the District.  The successful operation of the entire collection system and the treatment plant require coordination and cooperation between the three agencies.  Addressing peak wet weather flows and salt water intrusion may require the undertaking of substantial capital projects by one or more of the three agencies, either independently or jointly. The City cannot within the time frame set forth in this Settlement Agreement, fully resolve the peak wet weather flow capacity or the salt water without substantial cooperation and coordination among the three agencies.

G.      On April 10, 2008 the United States Environmental Protection Agency, Region IX, filed an administrative order for compliance against the City, the District and TCSD ("EPA

Order" or "A.O."). The Parties agree that many of the issues set forth in this Settlement Agreement are also addressed in that A.O. Specifically, Section VII of the A.O., IMPLEMENTATION STUDY AND REPORT, provides that by October 15, 2008 the TCSD, the District and the City shall complete a study that evaluates options for collaboration between the agencies on efforts to implement and comply with the requirements of the A.O. That Section goes on to require the three agencies to address, among other things, issues of staff deployment, coordination on condition and capacity assessments, coordination on capacity issues throughout the collection system and collaboration on Capital Improvement Programs. Section VII also requires adoption of strategies to assure the planning and funding necessary to complete the requirements of the A.O. River Watch and the City agree and acknowledge that cooperation among the TCSD, the District and the City is pivotal for the City to be able to meet the conditions of the A.O. and this Settlement Agreement.

H.     River Watch and the City, through their authorized representatives and without adjudication of River Watch's claims as set forth in the 60 Day and 90 Day Notice Letters and the Complaint, and without admission by the City of any alleged violation or wrongdoing, or any fact alleged in the 60 Day Notice Letter, the 90 Day Notice Letter and/or the Complaint, have chosen to resolve in full River Watch's allegations against the City as set forth in the 60 Day and 90 Day Notice Letters and the Complaint with respect to all facilities and equipment owned or operated by the City, and/or for which the City is legally responsible. In mutual consideration for the resolution of River Watch's allegations, the Parties agree to the following:

**AGREEMENT**

**I.     SUPPLEMENTAL ENVIRONMENTAL PROJECTS**

    A.     <u>Funding for Investigation and Repair of Private Laterals</u>.

    1.     River Watch and the City agree that leakage and/or releases from sewer laterals owned by private third-parties ("Private Laterals") may enter or have impacts on, among other things, nearby storm drains which discharge to waters of the Central San Francisco Bay. Within twelve (12) months of the date of Effective Date of this Agreement, the City shall provide funding for a Sewer Enhancement Project ("SEP") in the amount of One Hundred Thousand Dollars ($100,000.00) for investigation and repair of Private Laterals located within the City, including, as appropriate, a reduced cost or grant program for Private Lateral replacement. The SEP shall be reasonably approved by River Watch for the purpose of assuring consistency with the intent of the project, as set forth herein. The City shall provide a description of the proposed SEP in writing to River Watch within ninety (90) days of the Effective Date of this Settlement Agreement.

    2.     As an alternative to the SEP described in Section I.A.1 above relating to the inspection and improvement of Private Laterals, the City may propose, and the Parties may agree in writing, that the funding provided by the City pursuant to that Section I.A.1 be applied to an alternative SEP, consistent with the intent of this Agreement. If the Parties can not agree on an alternative SEP, the SEP in A1 above will apply.

## II.      COLLECTION SYSTEM PROGRAMS

A.      Inflow and Infiltration ("I/I") Study.

1.      Within twenty-four (24) months of the Effective Date of this Agreement, the City shall continue to undertake to complete an Inflow and Infiltration ("I/I") assessment within the City to determine I/I "hot spots" within the City's system, i.e. segments of sewage pipelines where structural damage may allow significant infiltration and inflow of stormwater, ground water and/or sea water into pipelines.  A salt water intrusion study shall also be completed to determine the areas of potential salt water intrusion within the City's collection system.  The City has already engaged RMC Engineers to perform portions of this study.  The studies will also provide for targeted field investigations to identify sources of I/I.  The primary methods of identifying I/I will be smoke testing, physical inspections of manholes and, in areas of salt water intrusion, closed circuit television inspection of sewer pipelines.  The City can satisfy the requirements of this Section II.A.1 through compliance with Section IV.B, Capacity Assessment, of the A.O.  To the extent the requirements of, or the current October 15, 2010 completion date for, A.O. Section IV.B is modified by the EPA, then the City's obligations under this Section II.A.1 shall be similarly modified, and EPA's modifications will apply to, and control, this Agreement, unless River Watch obtains a final determination that EPA's modification(s) was arbitrary and capricious, as that term is used in the Federal Administration And Procedures Act.

2.      In 2000, the City retained RMA/Engineering and Management to prepare a Management, Information, Monitoring and Reporting System for the City of Sausalito Sanitary Sewer System.  The work included a Condition Assessment ("Assessment").  The Assessment evaluated the condition of each pipeline segment in the City's sewage collection system and rated each of the segments based on the following three categories: (i) segments with defects that require immediate repair (*i.e.* Damage Severity Index (DSI) > 25) ("Category One"); (ii) segments with defects that do not require immediate repair at the time of assessment (*i.e.* DSI > 10 < 25) ("Category Two"); and (iii) segments with few or no defects that do not require repair within the near term (*i.e.* DSI < 10) ("Category Three").

3.      Within twenty-four (24) months of the Effective Date of this Agreement the City shall complete a re-inspection of all sewage collection pipelines owned or maintained by the City, which have not been video inspected since January 1, 2000, which were classified as Category Two in the Assessment.  The City can satisfy the requirements of this Section II.A.3 through compliance with A.O. Section IV.A, Sewer Pipe Maintenance Hole Inspection and Condition Assessment.  To the extent the requirements of, or the current April 15, 2010 completion date for, A.O. Section IV.A is modified by the EPA, then the City's obligations under this Section II.A.3 shall be similarly modified, and EPA's modifications will apply to, and control, this Agreement,  unless River Watch obtains a final determination that EPA's modification(s) was arbitrary and capricious, as that term is used in the Federal Administration And Procedures Act.

B.      Prioritize Capital Improvements Program.

1.      On or before October 15, 2010, the City shall develop a Capital

Improvements Program designating as highest priority for repair or replacement at least the following: 1) segments of the City's sewer pipelines determined to be sources of sewage contamination within storm drains, and 2) segments of the City's sewer pipelines identified by the I/I assessment as sources of salt water intrusion.  The second/next level of priority for repair or replacement shall be based on and include segments of the City's sewer pipelines identified in the I/I assessment as sources of high inflow and infiltration.

       2.    The City's Capital Improvements Program shall include repair or replacement of damaged sewer lines identified in the referenced I/I assessment and/or the Capacity Assessment identified in A.O. IV.B, within five (5) years as may be necessary to reduce to the maximum extent practical unpermitted discharges from the City's collection system  The City can satisfy the requirements of this Section II.B.2 through compliance with A.O. Section V, CAPACITY ASSURANCE.  To the extent the requirements of, or the current October 13, 2013 completion date for, A.O. Section V is modified by EPA, then the City's obligations under this Section II.B.2 shall be similarly modified, and EPA's modifications will apply to, and control, this Agreement, unless River Watch obtains a final determination that EPA's modification(s) was arbitrary and capricious, as that term is used in the Federal Administration And Procedures Act.

       3.    Beginning with the current fiscal year (2008-2009), and continuing in each fiscal year thereafter, the City will expend, or encumber in its Sewer Fund, no less than $150,000 per fiscal year and use those funds to complete the repairs and replacements of sewer lines identified in the Capital Improvements Program as having defects rated grade 4 or 5 according to the Pipeline Assessment and Certification Program (PACP) currently used by the City, or the equivalent grade(s) should the City's assessment methodology change.  City's obligation to expend or encumber such funding pursuant to this Section II.B.3 shall terminate upon the earlier of (1) approval by EPA of the plan required by Section VI.A of the A.O. or (2) the City's determination that 85% of the City-owned sewer lines have no grade 4 or 5 defects according to the City's current PACP, or the equivalent grade(s) should the City's assessment methodology change.  To the extent the EPA modifies Section VI. of the A.O., then the City's obligations under this Section II.B.3 shall be similarly modified, and EPA's modifications will apply to, and control, this Agreement, unless River Watch obtains a final determination that EPA's modification(s) was arbitrary and capricious, as that term is used in the Federal Administration And Procedures Act.

       4.    The City and River Watch recognize that compliance with the provisions of this Section II are in part dependent on actions of both TCSD and the District.  This specifically applies with regard to salt water intrusion issues and peak wet weather flows.  On the Effective Date of this Settlement Agreement it is understood that three agencies are working to coordinate a joint project for development of peak wet weather flow retention basin(s) and other required improvements to the system.  Similarly, reduction or elimination of salt water intrusion depends on cooperation from and coordination with TCSD and the District.  River Watch and the City acknowledge that the City will be required to play a role in organizing joint efforts and obtaining cooperation between itself, TCSD and the District, but the City acting alone may not be able to fully address peak flow and salt water intrusion issues.  River Watch will not take enforcement actions against the City provided the City has undertaken those activities which it can within its jurisdictional boundaries and made substantial and reasonable efforts to obtain cooperation from

the two other agencies.

## III.    SOURCE CONTROL

The City shall cooperate with the District to develop a source control program that permits the District to comply with all source control requirements set forth in the District's NPDES Permit.

## IV.    SEWAGE SYSTEM OVERFLOW REPORTING

Within twelve (12) months of the Effective Date of this Agreement, the City shall post a telephone number on its web site that private citizens can call to report sewage system overflows. The web site location will contain a list of all sewage system overflows in the City's service area for the previous twelve (12) months, including volume, location, and any discharge to a storm drain or directly to surface water.  The web site will inform private citizens that they are entitled to a response to any reported overflow, whether reported electronically or by telephone.

## V.    PRIVATE SEWER LATERAL INSPECTION

Within twelve (12) months following the Effective Date of this Agreement, the City shall consider amending its current Ordinance 18.12.110 to make inspection of the lateral by the City mandatory, in conjunction with repair of the main line to which the lateral is connected and to make repair or rehabilitation of the lateral mandatory as deemed necessary by the City Engineer. In the alternative, the City shall implement a voluntary upgrade program such as that adopted by the Tamalpais Community Services District ("TCSD") in Ordinance No. 83.

River Watch recommends coordinating mandatory inspection of private laterals with repair of the main trunk line to which the private laterals are attached.  River Watch also recommends the TCSD voluntary program where the agency negotiates low group rates for lateral repairs with the contractor repairing or replacing the main line and encourages voluntary participation with a loan program.

## VI.    ADMINISTRATIVE ORDER REPORTS

The following provisions from the A.O. are incorporated into this Agreement and, subject to the provisions below in this Section VI., are enforceable by River Watch as terms of this Agreement:

Section III.C. Pump Station Reliability Certification

Section IV. COLLECTION SYSTEM ASSESSMENTS All Provisions

Section V. CAPACITY ASSURANCE All Provisions

Section VI. INFRASTRUCTURE RENEWAL All Provisions

To the extent the EPA modifies any of the above sections of the A.O., or any others referred to elsewhere in this Agreement, the City's corresponding obligation under this Agreement shall be similarly modified, and EPA's modifications will apply to, and control, this Agreement, unless River Watch obtains a final determination that EPA' modification(s) was arbitrary and capricious.  Similarly, any determination by the EPA that the City is in compliance, or has complied, with any of the above terms in the A.O. shall also mean that the City is in compliance, or has complied, with the City's corresponding obligation under this Agreement, unless River Watch obtains a final determination that EPA's decision(s) was arbitrary and capricious, as that term is used in the Federal Administration And Procedures Act.

The City shall submit all reports and studies required under the A.O. to River Watch simultaneously with submitting them to the EPA.  The City may submit such reports to River Watch in electronic format.  The City shall notify River Watch of any amendments to the A.O.  If the City seeks an extension to any of the deadlines set forth in the A.O., the City will provide written notice to River Watch of the request for modification of the schedule at the same time it presents a formal request to the EPA.

## VII.  ATTORNEYS' FEES AND COSTS

Within thirty (30) days of the Effective Date of this Agreement, the City District shall pay River Watch the sum of Forty-Five Thousand Dollars ($45,000) in full satisfaction of all claims by River Watch for attorneys' fees and costs incurred in this matter, and for any fees associated with enforcement and monitoring of this Agreement, including all time spent by River Watch reviewing reports and studies required under this Agreement, reviewing study protocols, consulting with experts and all additional activities necessary in connection with this Agreement. Only action taken by River Watch to enforce this Agreement in a court of law or by arbitration may be subject to a claim by River Watch for additional fees, pursuant to Section X, ENFORCEMENT, of this Agreement.  Payment is to be made payable to Northern California River Watch.

## VIII.  SETTLEMENT AND RELEASE OF CLAIMS

River Watch, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, affiliates, agents, attorneys, representatives, and employees, forever releases and discharges all persons, including the City and its officials, officers, directors, employees, agents, attorneys, representatives, predecessors, successors and assigns, and any other person or entity acting on the City's behalf, from all actions, causes of action, claims, damages, expenses, fees (including experts and attorneys fees), fines, injunctive relief, liabilities, losses, orders, penalties, requirements, sanctions, and any other sum incurred or claimed or which could have been claimed in the Complaint, and/or the Notice Letters, including but not limited to any future claim based on an alleged failure of the City to comply with the Clean Water Act, RCRA and/or  the Porter-Cologne Water Quality Control Act (Water Code, §§ 13000, *et seq*.) for a period of seven (7) years following the Effective Date (collectively, "Claims").  This release includes, without limitation, a release, and covenant not to sue, for any Claims or injunctive relief which could have been asserted with respect to any activities in alleged violation of or arising

under the Clean Water Act, RCRA or the Porter-Cologne Water Quality Control Act, arising prior to the Effective Date or that may arise for a period of seven (7) years following the Effective Date. River Watch further expressly waives any rights or benefits available to it under the provisions of California Civil Code § 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

## IX.   FORCE MAJEURE

A.   Separate from, and in addition to any other limitations on the City's obligations under this Agreement, the City's obligation to comply with one or more of the provisions of this Agreement shall be deferred to the extent and for the duration that the delay in compliance is caused by an event or circumstance beyond the reasonable control of the City or any entity controlled by the City, including its contractors, and which event or circumstance could not have been reasonably foreseen and prevented by the exercise of due diligence by the City. Delays due to unanticipated or increased costs or expenses associated with the completion of any work or activity under this Agreement, or the City's failure to make timely and bona fide applications and to exercise diligent efforts to obtain permits, or normal inclement weather shall not, in any event, be considered to be circumstances beyond the City's control.

B.   If any event or circumstance occurs which causes or may cause a delay in the City's compliance with any provision of this Agreement and the City seeks relief as set forth in Paragraph IX.A above, the City shall comply with the following provisions:

1.   The City shall provide written notice to River Watch within thirty (30) days of the date that the City first knew of the event or circumstance.

2.   The City's notice shall specifically refer to this section of this Agreement and describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by the City to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance.  The City shall adopt all reasonable measures to avoid and minimize such delays.

3.   If River Watch disagrees with the City's notice, the Parties shall meet and confer in good faith to determine whether the Parties concur that the delay was an event or circumstance beyond the reasonable control of the City or any entity controlled by the City, including its contractors, which event or circumstance could not have been reasonably foreseen and prevented by the exercise of due diligence by the City.

## X.   ENFORCEMENT

A.     The Parties covenant and agree that, if either Party determines the other is in violation of one or more terms of this Agreement, they shall provide notice to the other in writing of what actions or inactions they deem to be in violation of this Agreement. Within thirty (30) days of receipt of such notice, the Party receiving the notice shall respond to the notice in writing. If the Parties still dispute compliance with this Agreement, within an additional thirty (30) days, the Parties will meet and confer in a good faith attempt to resolve their dispute.  If the Parties cannot informally resolve the dispute, they will enter into binding arbitration, conducted by an arbitrator agreed upon by both Parties.  Either Party may request that the presiding judge of the Marin County Superior Court may select an arbitrator if the Parties cannot reach an agreement. The arbitration shall be conducted in accordance with the arbitration rules and procedures of JAMS or other conventional rules agreed to by the Parties.  The arbitrator shall be empowered to determine a prevailing party and award payment of reasonable attorneys' fees and costs to that party.  To the extent there are multiple issues with a different prevailing party for one or more issues, the arbitrator may take those facts into account in terms of an award for fees and costs. The arbitration shall be binding and not subject to appeal, except for errors of law, which will be deemed in excess of the arbitrator's powers and reviewable by the federal court in which the subject action was filed.

B.     If River Watch asserts the City is in violation of this Agreement and the City corrects the action or inaction within sixty (60) days of notice from River Watch, no further enforcement action under the terms of this Agreement shall be taken by either Party.

## XI.     GENERAL PROVISIONS

A.     <u>Notice</u>.

Unless otherwise provided herein or until the Parties otherwise agree in writing, all communications and notice between the Parties regarding this Agreement shall be through the following addresses:

City of Sausalito:          City of Sausalito
                            420 Litho Street
                            Sausalito, CA 95965
                            Attn:  City Manager
                            Tel. (415) 289-4100
                            Fax. (415) 289-4167
                            Email:  apolitzer@ci.sausalito.ca.us


cc:                         Stuart I. Block
                            Cox, Castle & Nicholson LLP
                            555 California Street, 10th Floor
                            San Francisco, CA 94105
                            Tel. (415) 392-4200

                           Fax. (415) 392-4250
                           Email:  sblock@coxcastle.com

River Watch:          Northern California River Watch
                           6741 Sebastopol Avenue, Suite 140
                           Sebastopol, CA 95472
                           Attn:_____
                           Email: us@ncriverwatch.org

cc:                     Jerry Bernhaut, Esquire
                           P.O. Box 5469
                           Santa Rosa, CA 95402-5469
                           Tel. (707) 258-8175
                           Fax. (707) 258-8675
                           Email:  lhm28843@sbcglobal.net

B.       <u>Entire Agreement</u>.

       This Agreement constitutes the entire agreement between the Parties.  It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by authorized representatives of the Parties hereto.  The Parties hereby agree and acknowledge that they will make no claim at any time or place that this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character.  This Agreement shall supersede all previous agreements whether written or oral, that may have been reached between the Parties in connection with this matter and provides the sole remedy from any party to any other party regarding this matter.

       C.       <u>No Factual or Legal Mistake</u>.

       This Agreement shall not be subject to attack on the ground that any or all of the legal theories or factual assumptions used for negotiating purposes are for any reason inaccurate or inappropriate.  The Parties acknowledge that they entered into this Agreement solely based on their own independent investigation of the facts and circumstances material to this Agreement and not in any manner or to any degree based on any statement or omission by other parties and or their respective counsel.

       D.       <u>Voluntary</u>.

       This Agreement is entered into by each Party freely and voluntarily.  Each of the Parties has had the benefit of advice of counsel of their choice in the negotiating, drafting and executing of this Agreement and the language in all parts of this Agreement is the product of the efforts of all counsel.  Accordingly, neither the entire Agreement nor any provision in it shall be deemed to

have been proposed or drafted by a party or construed against any Party.

      E.    <u>Governing Law; Severable Enforceability</u>.

This Agreement shall be governed, interpreted, construed and enforced in accordance with the laws of the State of California applicable to agreements executed and wholly performed within said State, including, without limitation, the California Arbitration Act (California Civil Procedure Code, Part 3, Title 9, commencing with section 1280, *et seq*.). Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but rather, the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the Parties shall be construed and enforced accordingly.

      F.    <u>Authority</u>.

Each Party respectively represents and warrants to each other Party that the undersigned representative for such Party has full and complete authority to execute this Agreement and bind said Party to the terms hereof.

      G.    <u>Counterparts</u>.

This Agreement may be executed by facsimile and in counterparts, and each counterpart shall be considered an original, and all of which, taken together shall constitute one and the same instrument.

**[Signatures appear on the following page]**

**IT IS SO AGREED:**

Dated: November 10, 2008 Northern California River Watch

By: _Margaret K Bacigalupi_

Its: _President_

Dated: ~~November~~ December 3, 2008 City of Sausalito

By: _Amy Belser_

Its: _Mayor_

Page 10 of 11

**APPROVED AS TO FORM:**

Dated: 11/12/08

Jerry Bernhaut, Esquire
Attorney for Northern California River Watch

Dated: 11/25/08

Cox, Castle & Nicholson
City of Sausalito Special Counsel

58516\128284v1

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469     Santa Rosa, California 95402
Phone 707-528-8175   Fax 707-528-8675
lhm28843@sbcglobal.net


**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**


August 16, 2007


Pat Guasco, Sewer Coordinator
Community Development Department
City of Sausalito
420 Litho Street
Sausalito, CA 94965

*Re:*   *Notice of Violations and Intent to File Suit Under the Clean Water Act*

Dear Mr. Guasco:

The Clean Water Act ("CWA" or the "Act") § 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA § 505(a), 33 U.S.C. § 1365(a), a citizen must give notice of the intent to sue to the alleged violator, the Environmental Protection Agency ("EPA") and the State in which the violations occur. Private parties may bring citizens' suits pursuant to 33 U.S.C. § 1365 to enforce effluent standards or limitations, which are defined as including violations of 33 U.S.C. § 131l(a) and 33 U.S.C. § 1365(f)(1).

Northern California River Watch ("River Watch") hereby places the City of Sausalito (hereafter "the City") on notice that following the expiration of sixty (60) days from the date of this NOTICE River Watch intends to bring suit in Federal District Court against the City for its continuing violations of "an effluent standard or limitation", permit condition or requirement and/or "an order issued by the Administrator or a State with respect to such standard or limitation" under §505(a)(1) of the Act, 33 U.S.C. §1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by the incidents of non-compliance listed below.

The CWA regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharge of pollutants is prohibited with the exception of enumerated statutory exceptions. One such exception authorizes a polluter, who has been

issued a permit pursuant to CWA § 402, to discharge designated pollutants at certain levels subject to certain conditions. The City discharges pollutants to waters of the United States without a NPDES permit in direct violation of the Clean Water Act.

BACKGROUND

The City collects residential and commercial sewage which it pumps to the treatment plant in Sausalito. The Sausalito-Marin City Sanitary District, (hereafter "SMCSD"), which owns and operates the treatment plant in Sausalito, has identified the City's collection system as a significant source of increased wet weather flows into the treatment plant because of the high level of inflow and infiltration ("I/I") of stormwater and groundwater into the City's sewer system. In particular, the SMCSD has identified high salinity I/I into the City's sewer system as a major source of saltwater intrusion into the SMCSD treatment plant, which the SMCSD identifies as a significant factor in causing total suspended solids and biological oxygen demand effluent limit violations. (see Excerpt from 2004 Annual Self-Monitoring Program Report, submitted with May 6, 2005 Comments to RWQCB on Treatment Plant Compliance Inspection Report).

The SMCSD has also recognized that much of the satellite system I/I impacting its treatment plant performance comes from residential privately-owned sewer laterals (see February 16, 2007 No Feasible Alternatives Analysis for Blending Peak Wet Weather Flows, p.10). I/I from the City and the two other satellite systems is also identified as causing wet weather flows in excess of the SMCSD's maximum wet weather design flow of 6.0 MGD. Flows in excess of 6.0 MGD are diverted from biological treatment units directly to secondary clarifiers, and then blended with fully treated effluent. Blending is permitted when no feasible alternative is available to prevent loss of life, personal injury, or severe property damage, 40 CFR 122.41(m)(4)(I). Blending is compromised treatment which should not occur with any regularity. From 2002 through 2006 the SMCSD blended an average of 7 times per year.

The structural defects in the City's collection system which allow I/I into the system result in a build-up of pressure which causes sewage system surface overflows. Overflows caused by blockages and I/I result in the discharge of raw sewage into adjacent waters, including San Francisco Bay, which are waters of the United States. Underground leakages caused by pipeline ruptures and other structural defects result in discharges to these adjacent surface waters via underground tributaries, preferential pathways and other conduits. Surface waters become contaminated with fecal coliform, exposing people to human pathogens. The City's chronic collection system failures pose a substantial threat to public health. The City's operation is not regulated under a NPDES Permit. The City is currently regulated under the Statewide General Waste Discharge Requirements For Sanitary Sewer Systems, Order No. 2006-003-DWQ (hereafter "Statewide WDR"), which was adopted on May 2, 2006. The Statewide WDR requires satellite systems to develop a Sewage System Management Plan,

(hereafter "SSMP") within a deadline of 51 months after the adoption of the WDR for satellite systems with populations under 2,500. The SSMP includes a system evaluation and maintenance plan, but the contemplated time lines for implementation of concrete measures are as long as 10 to 15 years into the future. The City's ongoing violations pose an immediate threat to public health and the environment, both from surface water impacts of surface overflows and underground leakage of untreated sewage, and from the impacts of I/I on the SMCSD treatment system.

## REMEDIAL MEASURES

River Watch believes the following remedial measures are necessary to bring the City into compliance with the CWA and to prioritize remedial measures to reflect the biological impacts of its ongoing non compliance:

1.  A reduction of collection system I/I through an aggressive collection system management, operation and maintenance ("CMOM") program, coordinated with the other satellite systems and the SMCSD collection system conveying wastewater to the SMCSD treatment plant, with clear time lines for prioritized repairs.

2.  A mandatory private sewer lateral inspection and repair program, triggered by sale of property or based on geographical, age and/or composition factors, possibly coordinated with repair of public sewer lines.

3.  Compliance with monitoring and reporting requirements, especially regarding all overflows which reach storm drains or discharge directly to state waters.

4.  Creation of web site capacity to receive private party reports of sewage overflows. Provide notification to all customers and other members of the public of the existence of the web based program, including a commitment to respond to private parties submitting overflow reports.

5.  Development of a source control program to limit the entry of fats, oil, grease and debris, which cause blockages, into the sewage collection system.

6.  Performance of human marker testing on surface waters adjacent to sewer lines to test for sewage contamination from underground exfiltration.

## NOTICE

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify:

1. *The specific standard, limitation, or order alleged to have been violated.*

To comply with this requirement River Watch has identified the City's collection system discharges of raw sewage to surface waters in violation of the CWA with regard to discharging a pollutant from a point source to waters of the United States without a NPDES permit, CWA § 301(a), 33 U.S.C. § 1311(a) and 33 U.S.C. § 1365(f).

2. *The activity alleged to constitute a violation.*

River Watch has set forth narratives describing the discharges of raw sewage to surface waters as the activities leading to violations, and describes below with particularity specific incidents referenced in the City's own records and other public documents in the City's possession or otherwise available to the City, and incorporates by reference the records cited below from which descriptions of specific incidents were obtained.

3. *The person or persons responsible for the alleged violation.*

The person or persons responsible for the alleged violations are the entities identified collectively as "the City" and those of its employees responsible for compliance with the applicable law.

4. *The location of the alleged violation.*

The location or locations of the various violations are identified in records either created or maintained by or for the City, including the records cited below and the description of specific incidents referenced below.

5. *The date or dates of violation or a reasonable range of dates during which the alleged activity occurred.*

River Watch has examined Regional Water Quality Control Board records for the period from December 1, 2004 to May 2, 2007. The range of dates covered by this NOTICE is from December 1, 2004 to May 2, 2007. River Watch will from time to time update this NOTICE to include all violations which occur after the range of dates currently covered by this NOTICE. Failure to obtain a NPDES permit, discharging without a NPDES permit, subsurface discharge due to leaking collection system in

areas in contact with waters of the United States are continuous violations and therefore each day constitutes a violation.

6.   *The full name, address, and telephone number of the person giving notice.*

The entity giving this NOTICE is Northern California River Watch, 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472. Tel. 707-824-4372.

Northern California River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California.

The violations of the City as set forth in this NOTICE affect the health and enjoyment of River Watch members who reside and recreate in the associated watershed. Said members use this watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource is specifically impaired by the City's violations of the CWA.

## VIOLATIONS

From December 1, 2004 to May 2, 2007, the City has violated the CWA, the Basin Plan and the Code of Federal Regulations for discharging pollutants to waters of the United States from its collection system without a NPDES permit. Said violations are reported by City staff to and evidenced by the San Francisco Bay Water Board SSO Reporting Program Database Records. Furthermore these violations are continuing.

| Violations | Description |
|---|---|
| 900 | Collection system overflows caused by underground exfiltration. This occurs when untreated sewage is discharged from the collection system prior to the untreated sewage reaching the treatment plant. Underground discharges are alleged to have been continuous throughout the 30 month period from December 1, 2004 to May 2, 2007. Evidence to support the allegations of underground discharge of raw sewage exists in the City's own mass balance data regarding the number of connections in the service area, estimates of average daily volume of wastewater per connection, influent flow volumes to the treatment plant reported in the SMCSD's DMRs, video inspection of the collection system, and testing of waterways adjacent to sewer lines, including creeks, wetlands and Richardson Bay, for nutrients, pathogens and other constituents indicating sewage contamination, such as caffeine. |

50             Sewage system overflows as evidenced in San Francisco Bay Water Board SSO Reporting Program Database Records (from December 1, 2004 to May 2, 2007), including the overflow of 900 gallons which occurred on June 23, 2006 on the beach at the intersection of Bridgeway and Valley and discharged directly into San Francisco Bay. Also, unrecorded overflows witnessed by local residents.

## CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

> Jack Silver, Esquire
> Law Offices of Jack Silver
> Jerry Bernhaut, Esquire
> P.O. Box 5469
> Santa Rosa, CA 95402-5469
> Tel. 707-528-8175
> Fax. 707-528-8675

## CONCLUSION

River Watch believes this NOTICE sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter, River Watch intends to file a citizen's suit under § 505(a) of the CWA against the City for the violations identified in this NOTICE.

During the 60-day notice period, River Watch is willing to discuss effective remedies for the violations noted in this NOTICE. However, if the City wishes to pursue such discussions in the absence of litigation, it is suggested that those discussions be initiated within the next thirty (30) days so that they may be completed before the end of the 60-day notice period. River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when the notice period ends.

Very truly yours,

Jerry Bernhaut

cc:
Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N. W.
Mail Code 3213A
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
US. Environmental Protection Agency Region 9
75 Hawthorne St.
San Francisco, CA 94105

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-100

City Attorney and
City Council
City of Sausalito
420 Litho Street
Sausalito, CA 94965

Northern California River Watch
6741 Sebastopol Avenue, Suite 140
Sebastopol, CA 95472

# EXHIBIT B

# Law Office of Jack Silver



P.O. Box 5469  Santa Rosa, California 95402
Phone 707-528-8175  Fax 707-528-8675
lhm28843@sbcglobal.net

**VIA REGISTERED MAIL**
**RETURN RECEIPT REQUESTED**

August 20, 2007

Pat Guasco, Sewer Coordinator
Community Development Department
City of Sausalito
420 Litho Street
Sausalito, CA 94965

**Re:** *Notice of Violations and Intent to File Suit under the Resource
Conservation and Recovery Act*

Dear Mr. Guasco:

The Federal Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6901 et seq., requires that sixty days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under RCRA, a private party must give notice of the violation to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred. If the violator is a State or local agency, service of notice shall be accomplished by registered mail addressed to, or by personal service upon, the head of such agency. If the alleged violator is an individual or corporation, service of notice shall be accomplished by registered mail addressed to, or by personal service upon, the owner or site manager ,with a copy sent to the registered agent of the corporation. 42 U.S.C. § 6972(b)(1)(A).

RCRA also requires that a private party provide ninety (90) days prior notice to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment. 42 U.S.C.§ 6972(b)(2)(A).

On behalf of Northern California River Watch I am providing statutory notification to the City of Sausalito (hereafter "the City"), of the City's continuing and ongoing violations of RCRA in the operation of its sewage collection system.

NOTICE

Under RCRA, Notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under RCRA, shall include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the full name, address, and telephone number of the person giving notice. River Watch therefore provides the following information:

1.    *The specific standard, limitation, or order alleged to have been violated.*

RCRA, enacted in 1976, is a Federal law of the United States contained in 42 U.S.C. §§ 6901-6992. RCRA's goals are to protect the public from harm caused by waste disposal; to encourage reuse, reduction, and recycling; and, to clean up spilled or improperly stored wastes.

The Environmental Protection Agency's ("EPA") waste management regulations are codified at 40 C.F.R. §§ 239-282. Regulations regarding management of hazardous waste begin at 40 C.F.R. § 260. California has enacted laws and promulgated regulations that are at least as stringent as the federal regulations.

The City's collection, storage and conveyance of commercial and residential wastewater in the operation of its wastewater collection system, as identified in this NOTICE, has and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to RCRA regarding hazardous waste. [42 U.S.C. § 6972(a)(1)(A)].

The City's operation of its wastewater collection system, as identified in this NOTICE, has caused contamination of soil, surface and groundwaters in residential areas which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

2.    *The Activity Alleged to Constitute a Violation*

To comply with this requirement River Watch has set forth below narratives describing with particularity the activities leading to violations. In summary RCRA requires that the environment and public be protected from the hazardous wastes, in the form of

human residential waste and commercial waste, such as that discharged by the City. The pollutants, including coliform bacteria and other pathogens, discharged from the City's collection system as identified in this NOTICE, constitute hazardous waste under RCRA, and are required to be properly managed so as not to cause harm and endangerment to the public or the environment. RCRA specifically protects groundwater.

The liability of the City stems from its ownership and operation of its wastewater collection system, which violates RCRA and has contributed to the past or present handling, storage, transportation, or disposal of any hazardous waste which may present an imminent and substantial endangerment to health or the environment. By allowing its sewage collection system to deteriorate and develop structural defects, such as corrosion, ruptures and misaligned joints which allow the infiltration of rainwater and the exfiltration of untreated waste, the City has caused pollutants to be discharged to ground and surface waters.

3.    *The discharger responsible for the alleged violation.*

The discharger responsible for the alleged violations are is the City of Sausalito, referred to as the City throughout this NOTICE, and those of its employees responsible for compliance with the applicable law.

4.    *The location of the alleged violation.*

The location or locations of the various violations are identified in the BACKGROUND section and narratives in this NOTICE and in records either created or maintained by or for the City which relate to the City's operation of its sewage collection system, including the records cited below and the description of specific incidents referenced below.

5.    *The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.*

River Watch has examined Regional Water Quality Control Board ("RWQCB") records for the period from December 1, 2004 to May 2, 2007. The range of dates covered by this NOTICE is from December 1, 2004 to May 2, 2007. River Watch will from time to time update this NOTICE to include all violations which occur after the range of dates currently covered by this NOTICE. The violations identified in this NOTICE such as discharging pollutants to groundwater and surface waters, failure to obtain RCRA permits, failure to implement the requirements of RCRA, failure to meet water quality objectives, etc., are continuous. Therefore each day is a violation. River Watch believes all violations set forth in this NOTICE are continuing in nature or will likely continue after the filing of a

lawsuit. Specific dates of violations are evidenced in the City's own records (or lack thereof) or files and records of other regulatory agencies including the RWQCB.

6.    *The full name, address, and telephone number of the person giving notice.*

The entity giving this Notice is Northern California River Watch, a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California. Its address is 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA, 95472. Telephone 707-824-4372.

BACKGROUND

The City collects residential and commercial sewage which it pumps to the treatment plant in Sausalito owned and operated by the Sausalito-Marin City Sanitary District, (hereafter "SMCSD"). SMCSD has identified the City's collection system as a significant source of increased wet weather flows into the treatment plant because of the high level of inflow and infiltration ("I/I") of stormwater and groundwater into the City's system. In particular, the SMCSD has identified high salinity I/I into the City's system as a major source of saltwater intrusion into the SMCSD treatment plant, which the SMCSD identifies as a significant factor in causing total suspended solids and biological oxygen demand effluent limit violations. (see Excerpt from 2004 Annual Self-Monitoring Program Report, submitted with May 6, 2005 Comments to RWQCB on Treatment Plant Compliance Inspection Report).

The structural defects in the City's collection system which allow I/I into the system result in a build-up of pressure which causes sewage system surface overflows. Overflows caused by blockages and I/I result in the discharge of raw sewage into adjacent waters, including San Francisco Bay, which are waters of the U.S.. Sewage system overflows are evidenced in San Francisco Bay Water Board SSO Reporting Program Database Records (from December 1, 2004 to May 2, 2007), including the overflow of 900 gallons which occurred on June 23, 2006 on the beach at the intersection of Bridgeway and Valley and discharged directly into San Francisco Bay. Additionally, there are unrecorded overflows witnessed by local residents.

Underground leakages caused by pipeline ruptures and other structural defects result in discharges to adjacent surface waters via underground tributaries, preferential pathways and other conduits. Surface waters become contaminated with fecal coliform, exposing people to human pathogens. The City's chronic collection system failures pose a substantial threat to public health. The City's ongoing violations pose an immediate threat to public health and the environment, both from surface water impacts of surface overflows and underground leakage of untreated sewage, polluting both surface and groundwater.

## CONTINUING VIOLATIONS

RWQCB records indicate that structural defects in the City's collection system are an ongoing source of I/I into the SMCSD treatment plant. These same defects continue to allow exfiltration of untreated sewage into the soil and groundwater. The City is currently regulated under the Statewide General Waste Discharge Requirements For Sanitary Sewer Systems, Order No. 2006-003-DWQ (hereafter "Statewide WDR"), which was adopted on May 2, 2006. The Statewide WDR requires satellite systems to develop a Sewage System Management Plan, (hereafter "SSMP") within a deadline of 51 months after adoption of the WDR, for satellite systems with populations under 2,500. The SSMP includes a system evaluation and maintenance plan, but the contemplated time lines for implementation of concrete measures are as long as 10 to 15 years into the future. The City's ongoing violations pose an immediate threat to public health and the environment. River Watch believes an aggressive collection system management, operation and maintenance ("CMOM") program, with prioritized repairs based on human marker testing of waters adjacent to sewer lines, is necessary to avoid further RCRA violations by the City.

## REGULATORY STANDARDS

The RWQCB has adopted Maximum Contaminant Levels ("MCLs") and/or Water Quality Objectives ("WQOs") for constituents in surface and groundwater within the region to ensure protection of the beneficial uses of water.  Several beneficial uses of water exist, and the most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions need to be considered which evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels.  Existing and potential beneficial uses of area groundwater include domestic, agricultural, industrial and municipal water supply.

The RWQCB has also adopted a Water Quality Control Plan or "Basin Plan", which designates all surface and groundwater within the Bay Area regions as capable of supporting domestic water supply.

Sewage has been characterized as "hazardous waste" and "solid waste" within the meaning of RCRA provisions.  Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of sewage.

## VIOLATIONS

Between December 1, 2004 and May 2, 2007, ongoing violations of RCRA by the City as described herein have occurred.  The City has caused or permitted, causes or permits,

or threatens to cause or permit hazardous waste to be discharged into waters of the State and now creates, or threatens to create, a condition of pollution or nuisance. The discharge and threatened discharge of such waste is deleterious to the beneficial uses of water, and is creating and threatens to create a condition of pollution and nuisance which will continue unless the discharge and threatened discharge is permanently abated.

Past or current violations of RCRA authorize the assessment of civil penalties.  The enforcement provisions of 42 U.S.C. §§ 6928(a) and 6928(g) provide for penalties when conditions of hazardous waste disposal have been alleged - as River Watch has alleged in this Notice with respect to the City's sewage collection system.  Accordingly, under these provisions, persons or entities violating RCRA are subject to substantial liability to the United States on a per-day basis.

The City's storage and conveyance of sewage wastes in its sewage collection system between December 1, 2004 to May 2, 2007 has allowed significant quantities of hazardous constituents to be released or discharged into soil and groundwater in violation of provisions of the RCRA and California hazardous waste regulatory programs. The violations of RCRA alleged in this NOTICE are knowing and intentional in that  the City in the past has stored and conveyed hazardous substances, in the form of untreated sewage, in pipelines which City staff knew to be damaged to the extent that they were unable to contain the sewage and avoid leakage into soil and ground water.  City staff have known of the contamination of soil and ground water since at least 2000, and have also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to its sewer pipelines, and to continually contaminate and re-contaminate actual and potential sources of drinking water in addition to surface waters.

The City has collected, treated and stored industrial and domestic waste in a manner which has allowed significant quantities of pollutants to be discharged to soil and groundwater beneath its facilities and beneath adjacent properties where its collection system is located.   These pollutants are known to harm both plants and animals. These pollutants are creating an imminent and substantial endangerment to public health and the environment.

Violations of RCRA of the type alleged herein are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of California. With every discharge, groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

## VIOLATIONS OF PERMITS, STANDARDS AND REGULATIONS
42 U.S.C. § 6972(a)(1)(A)

Provisions of RCRA apply to the use and operation of waste disposal facilities including domestic sewage when such facilities are not already covered by a CWA § 402 permit. The City has no RCRA permit for the disposal, storage or use of hazardous or solid waste.

## IMMINENT AND SUBSTANTIAL ENDANGERMENT
42 U.S.C. § 6972(a)(1)(B)

The City's discharges have contaminated surface and groundwaters in a manner that adversely affects the beneficial uses of these waters, exceed MCLs and WQOs and in general create imminent and substantial endangerment to the health and safety of the public and to the environment.

In addition to the violations set forth above, this NOTICE is intended to cover all violations of RCRA evidenced by information which become available to River Watch after the date of this NOTICE, and seeks all penalties and other enforcement provisions related to such violations.

The violations of the City as set forth in this NOTICE affect the health and enjoyment of members of River Watch who reside, work and recreate in the affected area and use this watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Their health, property rights, use and enjoyment of this area is specifically impaired by the City's violations of RCRA.

## CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Offices of Jack Silver
Jerry Bernhaut, Esquire
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax. 707-528-8675

CONCLUSION

River Watch believe this NOTICE sufficiently states the grounds for filing suit under the statutory and regulatory provisions of RCRA.  At the close of the notice periods or shortly thereafter, River Watch intends to file suit against the City under the provisions of RCRA for each of the violations alleged herein.

During the 90-day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced.  If the City wishes to pursue such discussions in the absence of litigation, please do so immediately so that we might be on track to resolving these before the end of the notice period.  River Watch will not delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours,

Jerry Bernhaut

cc:
Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental  Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Dorothy R. Rice,  Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California  95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 "I" Street
Sacramento, CA 95814

City Attorney and City Council
City of Sausalito
420 Litho Street
Sausalito, CA 94965

# EXHIBIT C

Jack Silver, Esq. SBN  160575
Jerry Bernhaut, Esq. SBN 206264
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel.     (707) 528-8175
Fax.    (707) 528-8675
lhm28843@sbcglobal.net

Attorneys for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

**SC**

NORTHERN DISTRICT OF CALIFORNIA

NORTHERN CALIFORNIA RIVER
WATCH, a non-profit corporation,

              Plaintiff

      v.

CITY OF SAUSALITO, and
DOES 1-10, Inclusive,

              Defendants

_____/

CASE NO. 08 1966

COMPLAINT FOR INJUNCTIVE RELIEF,
CIVIL PENALTIES, RESTITUTION AND
REMEDIATION
(Environmental -
Clean Water Act  - 33 U.S.C. §1251 et seq.;
Resource Recovery and Conservation Act -
42 U.S.C. 6901, et. seq.)

     NOW COMES PLAINTIFF, NORTHERN CALIFORNIA RIVER WATCH a non-profit

corporation, (hereafter, "RIVER WATCH") by and through its  attorneys, and for its Complaint against

Defendants CITY OF SAUSALIT0 and DOES 1-10, Inclusive, (hereafter, "DEFENDANTS"), states

as follows:

## I. NATURE OF THE CASE

1.     This is a citizens' suit for relief brought by RIVER WATCH under the Federal Water Pollution

Control Act, also known as the Clean Water Act (hereafter, "CWA"), 33 U.S.C. §1251 et seq.,

specifically Section 505, 33 U.S.C. §1365, 33 U.S.C. § 1311, and 33 U.S.C. § 1342, to stop

DEFENDANTS from repeated and ongoing violations of the CWA.  These violations are detailed in the

COMPLAINT FOR INJUNCTIVE RELIEF                                        1

1   Notice of Violations and Intent to File Suit dated August 16, 2007 (hereafter, "CWA NOTICE") made

2   part of this pleading and attached hereto as EXHIBIT A.

3   2.      DEFENDANTS are routinely violating the CWA's prohibition against discharging a pollutant

4   from a point source to Waters of the United States without a National Pollutant Discharge Elimination

5   System("NPDES") permit, CWA §301(a), 33 U.S.C. §1311(a), in the course of their operation of their

6   Sewage Collection System.  Point source discharges to waters of the United States are occurring due to

7   numerous sewage pipeline surface overflows to waters of the United States as well as ongoing

8   underground overflows from aging, deteriorated sewer lines to hydrologically connected waters of the

9   United States, including Richardson Bay.

10      DEFENDANTS collect residential and commercial sewage which is pumped to the treatment

11  plant in the City of Sausalito operated by the Sausalito-Marin City Sanitary District, (hereafter

12  "SMCSD").  SMCSD has identified DEFENDANTS' collection system as a significant source of

13  increased wet weather flows into the treatment plant because of the high level of inflow and infiltration

14  ("I/I") of stormwater and groundwater into the DEFENDANTS' sewer system through cracks, eroded

15  sections and misaligned joints. The SMCSD has identified high salinity I/I into DEFENDANTS' sewer

16  system as a major source of saltwater intrusion into the SMCSD treatment plant, which the SMCSD

17  identifies as a significant factor in causing total suspended solids and biological oxygen demand effluent

18  limit violations. High wet weather flows into SMCSD's treatment plant,  caused in significant part by

19  I/I into DEFENDANTS' sewer lines, creates the need for SMCSD to direct excess flows to bypass

20  biological treatment units directly to secondary clarifiers, and then to be blended with fully treated

21  effluent. Blending is a compromised treatment process permitted when no feasible alternative is

22  available to prevent loss of life, personal injury, or severe property damage, 40 C.F.R. §122.41(m)(4)(1).

23  Blending has resulted in a number of effluent limit violations when the blended effluent was tested.

24      DEFENDANTS' sewer lines are point sources under the CWA. DEFENDANTS have no NPDES

25  Permit for the discharge of pollutants from a point source to waters of the United States.

26  3.      DEFENDANTS are also routinely violating the Basin Plan, Environmental Protection Agency

27  ("EPA") regulations codified in the Code of Federal Regulations, and toxics standards promulgated by

28  the State Water Resources Control Board in the course of DEFENDANTS' operation of the sewage

COMPLAINT FOR INJUNCTIVE RELIEF                                        2

collection system,  as described in the CWA NOTICE.

4.       Under 33 U.S.C. § 1251(e), Congress declared its goals and policies with regard to public participation in the enforcement of the CWA.  33 U.S.C. §1251(e) provides, in pertinent part:

> *Public participation in the development, revision, and enforcement of any regulation,*
>
> *standard, effluent limitation, plan or program established by the Administrator or any State*
>
> *under this chapter shall be provided for, encouraged, and assisted by the Administrator*
>
> *and the States.*

5.       DEFENDANTS illegally discharge to waters which are habitat for threatened or endangered species as that term is defined by the California EPA and the United States EPA.

6.       Plaintiff also brings this citizens' suit against DEFENDANTS under the citizen suit enforcement provisions of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., (hereafter, "RCRA"), specifically Sections 7002(a)(1)(A), 42 U.S.C.§ 6972(a)(1)(A) and 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B),  to stop DEFENDANTS from repeated and ongoing violations of the RCRA. These violations are detailed in the Notice of Violations and Intent to File Suit dated August 20, 2007 (hereafter, "RCRA NOTICE") made part of this pleading and attached hereto as EXHIBIT B.

7.       DEFENDANTS are routinely violating the RCRA's regulatory mandates applicable  to hazardous or solid wastes by causing untreated sewage, a hazardous waste under the RCRA, to be discharged or deposited where it is or probably will be discharged into waters of the State, thereby creating or threatening to create, conditions of pollution or nuisance. ( 42 U.S.C. § 6972(a)(1)(A)).

8.       DEFENDANTS are routinely violating the RCRA's prohibition against creating an imminent and substantial endangerment to human health and the environment by the operation of their sewage collection system, as identified in the RCRA NOTICE,  which has caused contamination of soil, groundwater and surface water with fecal coliform and other pathogens, (42 U.S.C. § 6972(a)(1)(B)).

9.       RIVER WATCH  seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for DEFENDANTS' violations of the CWA § 301, 33 U.S.C. § 1311 prohibition against discharging a pollutant to waters of the United States without a NPDES Permit, the RCRA's standards and regulations applicable to hazardous or solid wastes and DEFENDANTS' violation of the RCRA's prohibition against creating an imminent and substantial

1    endangerment to human health and the environment.

2    **II.  PARTIES**

3    10.     Plaintiff, NORTHERN CALIFORNIA RIVER WATCH, is a 501(c)(3) non-profit public benefit

4    corporation duly organized under the laws of the State of California, with headquarters and main office

5    located at 6741 Sebastopol Avenue, Suite 140, Sebastopol, California.  RIVER WATCH is dedicated

6    to protect, enhance and help restore the surface and subsurface waters of Northern California.  Its

7    members live in Northern California including Marin County where DEFENDANTS' sewage collection

8    system facilities and operations are located.

9    11.     Members of RIVER WATCH live nearby to waters affected by DEFENDANTS' illegal

10   discharges.  Said members have interests in the watersheds identified in this Complaint, which interests

11   are or may be adversely affected by DEFENDANTS' violations.  Said members use the effected waters

12   and effected watershed areas for domestic water, recreation, sports, fishing, swimming, hiking,

13   photography, nature walks, religious, spiritual and shamanic practices, and the like.  Furthermore, the

14   relief sought will redress the injury in fact, likelihood of future injury and interference with the interests

15   of said members.

16   12.     RIVER WATCH is informed and believes and on such information and belief alleges that

17   Defendant CITY OF SAUSALITO. is a City  formed under California Government Code § 34000 et.

18   sec., with  administrative offices  located at 420 Litho Street, Sausalito, Marin County, California.

19   13.     DEFENDANTS DOES 1 - 10, Inclusive, respectively, are persons, partnerships, corporations

20   and entities, who are, or were, responsible for, or in some way contributed to, the violations which are

21   the subject of this Complaint or are, or were, responsible for the maintenance, supervision, management,

22   operations, or insurance coverage of DEFENDANTS' sewage collection system facilities and operations.

23    The names, identities, capacities, and functions of DEFENDANTS DOES 1 - 10, Inclusive are presently

24   unknown to RIVER WATCH , who  shall seek leave of court to amend this Complaint to insert the true

25   names of said DOES Defendants when the same have been ascertained.

26   **III.  JURISDICTIONAL ALLEGATIONS**

27   14.     Subject matter jurisdiction is conferred upon this Court by Section 505(a)(1) of the CWA, 33

28   U.S.C. § 1365(a)(1), which states in part that, "any citizen may commence a civil action on his own

COMPLAINT FOR INJUNCTIVE RELIEF                                    4

behalf against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation . . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." For purposes of Section 505, "the term 'citizen' means a person or persons having an interest which is or may be adversely affected."

15.     Subject matter jurisdiction is further conferred upon this Court by RCRA § 7002(a)(1), 42 U.S.C. § 6972(a)(1), which states in part that, "...any person may commence a civil action on his own behalf (A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition requirement , prohibition or order which has become effective pursuant to this chapter, or (B) against any person ...who has contributed or who is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

16.     Members and supporters of RIVER WATCH reside in the vicinity of, derive livelihoods from, own property near, and/or recreate on, in or near and/or otherwise use, enjoy and benefit from the waterways and associated natural resources into which DEFENDANTS' discharge pollutants, or by which DEFENDANTS' operations adversely affect their interests, in violation of CWA § 301(a), 33 U.S.C.§1311(a), CWA § 505(a)(1),  33 U.S.C.§ 1365(a)(1), CWA § 402, 33 U.S.C.§ 1342 and RCRA § 7002 (a)(1)(B), 42 U.S.C. § 6972(a)(1)(B). The health, economic, recreational, aesthetic and environmental interests of RIVER WATCH and its members may be, have been, are being, and will continue to be adversely affected by DEFENDANTS' unlawful violations.  RIVER WATCH and its members contend there exists an injury in fact to them, causation of that injury by DEFENDANTS' complained of conduct herein, and a likelihood that the requested relief will redress that injury.

17.     Pursuant to CWA § 505(b)(1)(A), 33 U.S.C.§1365(b)(1)(A), notice of the CWA violations alleged in this Complaint was given  more than sixty (60) days prior to commencement of this lawsuit, to: (a) defendant City of Sausalito (b) the United States EPA, Federal and Regional, and (c) the State of California Water Resources Control Board.

18.      Pursuant to CWA § 505(c)(3), 33 U.S.C.  § 1365(c)(3), a copy of this Complaint has been served on the United States Attorney General and the Administrator of the Federal EPA.

19.      Pursuant to Section RCRA § 7002 (2)(A), 42 U.S.C. § 6972(2)(A), notice of the RCRA violations alleged in this Complaint was given more than ninety (90) days prior to the commencement of this lawsuit to: (a) defendant City of Sausalito, (b) the United States Environmental Protection Agency, Federal and Regional,(c) the State of California Water Resources Control Board, and (d) the State of California Integrated Waste Management Board.

20.      Pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), venue lies in this District as the sewage collection system facilities under DEFENDANTS' operation and/or control, and the sites where illegal discharges occurred, which are the source of the violations complained of in this action, are located within this District.

21.      Pursuant to RCRA § 7002(a)&(b), 42 U.S.C. §§ 6972(a)&(b) venue lies in this District as DEFENDANTS' sewage system collection facilities are located in this District. All of the sites of pollution are located in this District as well.

## IV.  GENERAL ALLEGATIONS

22.       RIVER WATCH   incorporates by reference all the foregoing including EXHIBITS A and B as though the same were separately set forth herein.

23.      DEFENDANTS own and operate a separate sanitary sewage collection system which collects sewage from approximately 6,200 connections servicing a population of approximately 7,454 in southern Marin County.  Sewage collected by DEFENDANTS' collection system is conveyed to the sewage collection system operated by SMCSD and thereafter conveyed to SMCSD's wastewater treatment plant. DEFENDANTS' sewer lines discharge pollutants both directly and indirectly into the waterways referenced below.

24.      All illegal discharges and activities complained of in this Complaint occur in the waterways named in the CWA NOTICE, all of which are waters of the United States, and at the locations identified in detail in the CWA NOTICE and the RCRA NOTICE.

25.      The Regional Water Quality Control Board  has determined that the watershed areas and affected waterways are beneficially used for drinking water, water contact recreation, non-contact water recreation, fresh water habitat, wildlife habitat, preservation of rare and endangered species, fish migration, fish spawning, industrial service supply, navigation, and sport fishing.

# V.   STATUTORY AND REGULATORY BACKGROUND

26.     CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a "point source" into the navigable waters of the United States, unless such discharge is in compliance with applicable effluent limitations as set by the EPA and the applicable State agency.   These limits are to be incorporated into a NPDES permit for that point source specifically. The effluent discharge standards or limitations specified in a NPDES Permit define the scope of the authorized exception to the 33 U.S.C. § 1311(a), such that violation of a permit limit places a polluter in violation of 33 U.S.C. § 1311(a) and thus in violation of the CWA. Additional sets of regulations are set forth in the Basin Plan, California Toxics Plan, the Code of Federal Regulations and other regulations promulgated by the EPA and the State Water Resources Control Board..  CWA § 301(a) prohibits discharges of pollutants or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342.  The sewage collection system facilities and sewer lines owned and operated by DEFENDANTS are point sources under the CWA.

27.     The affected waterways detailed in this Complaint and in the CWA NOTICE are navigable waters of the United States within the meaning of CWA §  502(7), 33 U.S.C. § 1362(7).

28.     The Administrator of the EPA has authorized the Regional Water Quality Control Board  to issue NPDES permits, subject to specified conditions and requirements, pursuant to CWA § 402, 33 U.S.C. § 1342.

29.     DEFENDANTS have no NPDES permit for discharging pollutants from their sewage collection system to waters of the United States. Without a NPDES Permit, all unauthorized point source discharges from DEFENDANTS' sewage collection system to waters of the United States are illegal. DEFENDANTS' sewer lines are a point source.  Discharges from this point source via surface overflows and tributary ground waters to waters of the United States, without a NPDES permit, are illegal.

30.     RCRA §  7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits an action against any person who violates a PERMIT, STANDARD or REGULATION pursuant to the RCRA.  DEFENDANTS have stored, handled and disposed of materials containing untreated sewage, defined as hazardous wastes under the RCRA, in a manner which has allowed these pollutants to be discharged to soil and

groundwater adjacent to DEFENDANTS' sewer collection system and sewer lines, in violation of regulations regarding the use and disposal of hazardous wastes. (RCRA § 3004 (d),   42 U.S.C. §6924(d)).

31.    RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) permits an action against any person who has contributed to or who is contributing to the past or present handling of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. The untreated sewage stored and conveyed in DEFENDANTS' sewage collection system consists of solid wastes and hazardous wastes pursuant to RCRA §6903(27), 42 U.S.C. § 6972(27), and RCRA § 6903(5), 42 U.S.C. § 6972 (5).  Pollutants from untreated sewage in DEFENDANTS' sewer lines have leached into soil and ground water adjacent to DEFENDANTS' sewer lines, creating an imminent and substantial endangerment to health and the environment.

## VI.  DEFENDANTS' VIOLATIONS

32.    DEFENDANTS' discharges of pollutants from their sewage collection system to waters of the United States without a NPDES Permit, as detailed in the CWA NOTICE  incorporated herein by reference as Exhibit A, are violations of CWA §301(a), 33 U.S.C. § 1311(a)  The violations are established in Regional Water Quality Control Board Files for DEFENDANTS' sewage collection system facilities, as well as in studies conducted by DEFENDANTS in compliance with orders from regulatory agencies .

33.    The enumerated violations are detailed in the CWA NOTICE, incorporated herein by reference, and below, designating the section of the CWA violated by the described activity.

34.    The location of the discharges are the discharges points as described in the CWA NOTICE, incorporated herein by reference.

35.    DEFENDANTS' discharges to soil and groundwater violate the RCRA's regulations regarding the storage and disposal of hazardous wastes. The violations are established in Regional Water Quality Control Board Files for DEFENDANTS' sewage collection system facilities, as well as in studies conducted by DEFENDANTS in compliance with orders from regulatory agencies

36.    DEFENDANTS' discharges to soil and ground water violate the RCRA's prohibition against creating an imminent and substantial endangerment to health and the environment.  The violations are

1    established in Regional Water Quality Control Board Files for DEFENDANTS' sewage collection

2    system, as well as in studies conducted by DEFENDANTS in compliance with orders from regulatory

3    agencies .

4    37.    The enumerated violations are detailed in the RCRA NOTICE incorporated herein by reference,

5    and below, designating the section of the RCRA violated by the described activity.

6                        **VII.  CLAIMS FOR RELIEF**

7                        **A.   FIRST CLAIM FOR RELIEF**

8    **Violation of CWA  33 U.S.C. §  1251 et seq., 33 U.S.C. § 1342 (a) and (b),  33 U.S.C. § 1311**

9    **Discharge of Pollutants from Point Sources to United States Waters Without a NPDES Permit**

10   38.    RIVER WATCH  realleges and incorporates by reference the allegations of Paragraphs 1

11   through 37 including EXHIBIT A as though fully set forth herein.

12   39.    DEFENDANTS have and continue to violate the CWA as evidenced by the discharges of

13   pollutants from a point source without a NPDES permit in violation of CWA § 301, 33 U.S.C. § 1311.

14   40.     RIVER WATCH contends the violations of DEFENDANTS alleged herein are ongoing and

15   will continue after the filing of this Complaint.  RIVER WATCH  alleges herein all violations which

16   may have occurred or will occur prior to trial, but for which data may not have been available or

17   submitted or apparent from the face of the reports or data submitted by DEFENDANTS to the Regional

18   Water Quality Control Board or to RIVER WATCH  prior to the filing of this Complaint.  RIVER

19   WATCH will file additional amended complaints if necessary to address DEFENDANTS' State and

20   Federal violations which may occur after the filing of this Complaint.  Each of DEFENDANTS'

21   violations is a  separate violation of the CWA.

22   41.    RIVER WATCH avers and believes and on such belief alleges that without the imposition of

23   appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue

24   to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and

25   releases.  RIVER WATCH  avers and believes and on such belief alleges that the relief requested in this

26   Complaint will redress the injury to RIVER WATCH and its members, prevent future injury, and protect

27   the their interests which are or may be adversely affected by DEFENDANTS' violations of the CWA,

28   as well as other State and Federal standards.

## B.   SECOND CLAIM FOR RELIEF

### Violation of 42 U.S.C. § 6901 et seq., specifically 42 U.S.C.  § 6972(a)(1)(A)

42.      RIVER WATCH  reallege  and incorporates by reference the allegations of Paragraphs 1 through 41 including EXHIBIT B as though fully set forth herein.

43.      RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits an action against any person who violates a PERMIT, STANDARD or REGULATION pursuant to the RCRA. Civil penalties may be assessed against any person or entity in violation of this section, under the provisions of 42 U.S.C. §§ 6928 (a) and (g).

44.      DEFENDANTS' storage and handling of untreated sewage at their sewage collection system facilities, defined as hazardous wastes under the RCRA, has caused the discharge of hazardous wastes to soil and groundwater in violation of regulations regarding the use and disposal of hazardous wastes. (RCRA §3004 (d),  42 U.S.C. §6924(d)).

45.      RIVER WATCH  avers and believes and on such belief alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate a PERMIT, STANDARD or REGULATION pursuant to the RCRA, specifically RCRA § 3004 (d),  42 U.S.C. §6924(d).

## C. THIRD CLAIM FOR RELIEF

### Violation of 42 U.S.C. § 6901 et seq., specifically 42 U.S.C.  § 6972(a)(1)(B)

46.      RIVER WATCH  realleges and incorporate by reference the allegations of Paragraphs 1 through 55 including EXHIBIT B as though fully set forth herein.

47.      RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action against any person or governmental entity including a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment.

48.      DEFENDANTS own and operate a sewage collection system in which they have stored and conveyed and from which they have discharged untreated sewage containing fecal coliform and other pollutants.

49.     DEFENDANTS have stored untreated sewage in a manner which has allowed it to leach pollutants into soil and ground water  adjacent to DEFENDANTS' sewer lines.

50.     The pollutants listed above, are known to be hazardous to the environment and if released into the environment in sufficient quantity to pose an imminent and substantial risk.

51.     For purposes of the RCRA, untreated sewage is "solid waste" and " hazardous waste" within the meaning of the statute.

52.     RIVER WATCH is informed and believes, and thereon alleges  that amounts of untreated sewage released by DEFENDANTS from their sewage collection system are in sufficient quantity to pose an imminent and substantial risk to both the environment and human health.

## VIII.  RELIEF REQUESTED

53.     Declare DEFENDANTS to have violated and to be in violation of the CWA;

54.     Issue an injunction ordering DEFENDANTS to immediately operate their sewage collection system in compliance with the CWA;

55.     Order DEFENDANTS to pay civil penalties of $27,500.00 per violation per day for their violations of the CWA;

56.     Declare DEFENDANTS to have violated and to be in violation of RCRA § 6972(a)(1)(A) for violation of a PERMIT, STANDARD or REGULATION regarding the storage and disposal of hazardous wastes, specifically RCRA § 3004 (d),  42 U.S.C. §6924(d);

57.     Enjoin DEFENDANTS from storing and disposing of hazardous wastes in their sewage collection system in a manner which violates RCRA §3004 (d),  42 U.S.C. §6924(d);

58.     Order DEFENDANTS to pay civil penalties of $25,000.00 per violation per day for their violations of RCRA § 6972(a)(1)(A);

59.     Declare DEFENDANTS to have violated and to be in violation of the RCRA for discharging toxic pollutants from their sewage collection system which are known human pathogens in sufficient quantity to pose an imminent and substantial risk to health;

60.     Enjoin DEFENDANTS from discharging toxic pollutants from their sewage collection system which toxins pose an imminent and substantial risk to health and the environment;

1   61.    Order DEFENDANTS to pay reasonable attorneys' fees and costs of RIVER WATCH (including

2   expert witness fees), as provided by 33 U.S.C. § 1365(d), 42 U.S.C.§ 6972(e) and applicable California

3   law; and,

4   62.    For such other and further relief as the court deems just and proper.

5

6

7   DATED:   April 14 , 2008

8                                                       JERRY BERNHAUT
                                                        Attorney for Plaintiff
9                                                       NORTHERN CALIFORNIA RIVER WATCH,

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF                                                12

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469          Santa Rosa, California 95402
Phone 707-528-8175     Fax 707-528-8675
lhm28843@sbcglobal.net


**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**


August 16, 2007


Pat Guasco, Sewer Coordinator
Community Development Department
City of Sausalito
420 Litho Street
Sausalito, CA 94965

*Re:*   *Notice of Violations and Intent to File Suit Under the Clean Water Act*

Dear Mr. Guasco:

The Clean Water Act ("CWA" or the "Act") § 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA § 505(a), 33 U.S.C. § 1365(a), a citizen must give notice of the intent to sue to the alleged violator, the Environmental Protection Agency ("EPA") and the State in which the violations occur. Private parties may bring citizens' suits pursuant to 33 U.S.C. § 1365 to enforce effluent standards or limitations, which are defined as including violations of 33 U.S.C. § 131l(a) and 33 U.S.C. § 1365(f)(l).

Northern California River Watch ("River Watch") hereby places the City of Sausalito (hereafter "the City") on notice that following the expiration of sixty (60) days from the date of this NOTICE River Watch intends to bring suit in Federal District Court against the City for its continuing violations of "an effluent standard or limitation", permit condition or requirement and/or "an order issued by the Administrator or a State with respect to such standard or limitation" under §505(a)(1) of the Act, 33 U.S.C. §1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by the incidents of non-compliance listed below.

The CWA regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharge of pollutants is prohibited with the exception of enumerated statutory exceptions. One such exception authorizes a polluter, who has been

issued a permit pursuant to CWA § 402, to discharge designated pollutants at certain levels subject to certain conditions. The City discharges pollutants to waters of the United States without a NPDES permit in direct violation of the Clean Water Act.

BACKGROUND

The City collects residential and commercial sewage which it pumps to the treatment plant in Sausalito. The Sausalito-Marin City Sanitary District, (hereafter "SMCSD"), which owns and operates the treatment plant in Sausalito, has identified the City's collection system as a significant source of increased wet weather flows into the treatment plant because of the high level of inflow and infiltration ("I/I") of stormwater and groundwater into the City's sewer system. In particular, the SMCSD has identified high salinity I/I into the City's sewer system as a major source of saltwater intrusion into the SMCSD treatment plant, which the SMCSD identifies as a significant factor in causing total suspended solids and biological oxygen demand effluent limit violations. (see Excerpt from 2004 Annual Self-Monitoring Program Report, submitted with May 6, 2005 Comments to RWQCB on Treatment Plant Compliance Inspection Report).

The SMCSD has also recognized that much of the satellite system I/I impacting its treatment plant performance comes from residential privately-owned sewer laterals (see February 16, 2007 No Feasible Alternatives Analysis for Blending Peak Wet Weather Flows, p.10). I/I from the City and the two other satellite systems is also identified as causing wet weather flows in excess of the SMCSD's maximum wet weather design flow of 6.0 MGD. Flows in excess of 6.0 MGD are diverted from biological treatment units directly to secondary clarifiers, and then blended with fully treated effluent. Blending is permitted when no feasible alternative is available to prevent loss of life, personal injury, or severe property damage, 40 CFR 122.41(m)(4)(I). Blending is compromised treatment which should not occur with any regularity. From 2002 through 2006 the SMCSD blended an average of 7 times per year.

The structural defects in the City's collection system which allow I/I into the system result in a build-up of pressure which causes sewage system surface overflows. Overflows caused by blockages and I/I result in the discharge of raw sewage into adjacent waters, including San Francisco Bay, which are waters of the United States. Underground leakages caused by pipeline ruptures and other structural defects result in discharges to these adjacent surface waters via underground tributaries, preferential pathways and other conduits. Surface waters become contaminated with fecal coliform, exposing people to human pathogens. The City's chronic collection system failures pose a substantial threat to public health. The City's operation is not regulated under a NPDES Permit. The City is currently regulated under the Statewide General Waste Discharge Requirements For Sanitary Sewer Systems, Order No. 2006-003-DWQ (hereafter "Statewide WDR"), which was adopted on May 2, 2006. The Statewide WDR requires satellite systems to develop a Sewage System Management Plan,

(hereafter "SSMP") within a deadline of 51 months after the adoption of the WDR for satellite systems with populations under 2,500. The SSMP includes a system evaluation and maintenance plan, but the contemplated time lines for implementation of concrete measures are as long as 10 to 15 years into the future. The City's ongoing violations pose an immediate threat to public health and the environment, both from surface water impacts of surface overflows and underground leakage of untreated sewage, and from the impacts of I/I on the SMCSD treatment system.

## REMEDIAL MEASURES

River Watch believes the following remedial measures are necessary to bring the City into compliance with the CWA and to prioritize remedial measures to reflect the biological impacts of its ongoing non compliance:

1.  A reduction of collection system I/I through an aggressive collection system management, operation and maintenance ("CMOM") program, coordinated with the other satellite systems and the SMCSD collection system conveying wastewater to the SMCSD treatment plant, with clear time lines for prioritized repairs.

2.  A mandatory private sewer lateral inspection and repair program, triggered by sale of property or based on geographical, age and/or composition factors, possibly coordinated with repair of public sewer lines.

3.  Compliance with monitoring and reporting requirements, especially regarding all overflows which reach storm drains or discharge directly to state waters.

4.  Creation of web site capacity to receive private party reports of sewage overflows. Provide notification to all customers and other members of the public of the existence of the web based program, including a commitment to respond to private parties submitting overflow reports.

5.  Development of a source control program to limit the entry of fats, oil, grease and debris, which cause blockages, into the sewage collection system.

6.  Performance of human marker testing on surface waters adjacent to sewer lines to test for sewage contamination from underground exfiltration.

## NOTICE

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify:

1.   *The specific standard, limitation, or order alleged to have been violated.*

To comply with this requirement River Watch has identified the City's collection system discharges of raw sewage to surface waters in violation of the CWA with regard to discharging a pollutant from a point source to waters of the United States without a NPDES permit, CWA § 301(a), 33 U.S.C. § 1311(a) and 33 U.S.C. § 1365(f).

2.   *The activity alleged to constitute a violation.*

River Watch has set forth narratives describing the discharges of raw sewage to surface waters as the activities leading to violations, and describes below with particularity specific incidents referenced in the City's own records and other public documents in the City's possession or otherwise available to the City, and incorporates by reference the records cited below from which descriptions of specific incidents were obtained.

3.   *The person or persons responsible for the alleged violation.*

The person or persons responsible for the alleged violations are the entities identified collectively as "the City" and those of its employees responsible for compliance with the applicable law.

4.   *The location of the alleged violation.*

The location or locations of the various violations are identified in records either created or maintained by or for the City, including the records cited below and the description of specific incidents referenced below.

5.   *The date or dates of violation or a reasonable range of dates during which the alleged activity occurred.*

River Watch has examined Regional Water Quality Control Board records for the period from December 1, 2004 to May 2, 2007. The range of dates covered by this NOTICE is from December 1, 2004 to May 2, 2007. River Watch will from time to time update this NOTICE to include all violations which occur after the range of dates currently covered by this NOTICE. Failure to obtain a NPDES permit, discharging without a NPDES permit, subsurface discharge due to leaking collection system in

areas in contact with waters of the United States are continuous violations and therefore each day constitutes a violation.

6. *The full name, address, and telephone number of the person giving notice.*

The entity giving this NOTICE is Northern California River Watch, 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472. Tel. 707-824-4372.

Northern California River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California.

The violations of the City as set forth in this NOTICE affect the health and enjoyment of River Watch members who reside and recreate in the associated watershed. Said members use this watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource is specifically impaired by the City's violations of the CWA.

VIOLATIONS

From December 1, 2004 to May 2, 2007, the City has violated the CWA, the Basin Plan and the Code of Federal Regulations for discharging pollutants to waters of the United States from its collection system without a NPDES permit. Said violations are reported by City staff to and evidenced by the San Francisco Bay Water Board SSO Reporting Program Database Records. Furthermore these violations are continuing.

| Violations | Description |
| --- | --- |
| 900 | Collection system overflows caused by underground exfiltration. This occurs when untreated sewage is discharged from the collection system prior to the untreated sewage reaching the treatment plant. Underground discharges are alleged to have been continuous throughout the 30 month period from December 1, 2004 to May 2, 2007. Evidence to support the allegations of underground discharge of raw sewage exists in the City's own mass balance data regarding the number of connections in the service area, estimates of average daily volume of wastewater per connection, influent flow volumes to the treatment plant reported in the SMCSD's DMRs, video inspection of the collection system, and testing of waterways adjacent to sewer lines, including creeks, wetlands and Richardson Bay, for nutrients, pathogens and other constituents indicating sewage contamination, such as caffeine. |

50          Sewage system overflows as evidenced in San Francisco Bay Water Board SSO Reporting Program Database Records (from December 1, 2004 to May 2, 2007), including the overflow of 900 gallons which occurred on June 23, 2006 on the beach at the intersection of Bridgeway and Valley and discharged directly into San Francisco Bay. Also, unrecorded overflows witnessed by local residents.

## CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Offices of Jack Silver
Jerry Bernhaut, Esquire
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax. 707-528-8675

## CONCLUSION

River Watch believes this NOTICE sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter, River Watch intends to file a citizen's suit under § 505(a) of the CWA against the City for the violations identified in this NOTICE.

During the 60-day notice period, River Watch is willing to discuss effective remedies for the violations noted in this NOTICE. However, if the City wishes to pursue such discussions in the absence of litigation, it is suggested that those discussions be initiated within the next thirty (30) days so that they may be completed before the end of the 60-day notice period. River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when the notice period ends.

Very truly yours,

Jerry Bernhaut

cc:
Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N. W.
Mail Code 3213A
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
US. Environmental Protection Agency Region 9
75 Hawthorne St.
San Francisco, CA 94105

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-100

City Attorney and
City Council
City of Sausalito
420 Litho Street
Sausalito, CA 94965

Northern California River Watch
6741 Sebastopol Avenue, Suite 140
Sebastopol, CA 95472

# EXHIBIT B

# Law Office of Jack Silver



P.O. Box 5469          Santa Rosa, California 95402
Phone 707-528-8175    Fax 707-528-8675
lhm28843@sbcglobal.net

**VIA REGISTERED MAIL**
**RETURN RECEIPT REQUESTED**

August 20, 2007

Pat Guasco, Sewer Coordinator
Community Development Department
City of Sausalito
420 Litho Street
Sausalito, CA 94965

*Re:*    ***Notice of Violations and Intent to File Suit under the Resource***
***Conservation and Recovery Act***

Dear Mr. Guasco:

The Federal Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6901 et seq., requires that sixty days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under RCRA, a private party must give notice of the violation to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred. If the violator is a State or local agency, service of notice shall be accomplished by registered mail addressed to, or by personal service upon, the head of such agency. If the alleged violator is an individual or corporation, service of notice shall be accomplished by registered mail addressed to, or by personal service upon, the owner or site manager ,with a copy sent to the registered agent of the corporation. 42 U.S.C. § 6972(b)(1)(A).

RCRA also requires that a private party provide ninety (90) days prior notice to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment. 42 U.S.C.§ 6972(b)(2)(A).

On behalf of Northern California River Watch I am providing statutory notification to the City of Sausalito (hereafter "the City"), of the City's continuing and ongoing violations of RCRA in the operation of its sewage collection system.

NOTICE

Under RCRA, Notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under RCRA, shall include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the full name, address, and telephone number of the person giving notice. River Watch therefore provides the following information:

1.      *The specific standard, limitation, or order alleged to have been violated.*

RCRA, enacted in 1976, is a Federal law of the United States contained in 42 U.S.C. §§ 6901-6992. RCRA's goals are to protect the public from harm caused by waste disposal; to encourage reuse, reduction, and recycling; and, to clean up spilled or improperly stored wastes.

The Environmental Protection Agency's ("EPA") waste management regulations are codified at 40 C.F.R. §§ 239-282. Regulations regarding management of hazardous waste begin at 40 C.F.R. § 260. California has enacted laws and promulgated regulations that are at least as stringent as the federal regulations.

The City's collection, storage and conveyance of commercial and residential wastewater in the operation of its wastewater collection system, as identified in this NOTICE, has and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to RCRA regarding hazardous waste. [42 U.S.C. § 6972(a)(1)(A)].

The City's operation of its wastewater collection system, as identified in this NOTICE, has caused contamination of soil, surface and groundwaters in residential areas which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

2.      *The Activity Alleged to Constitute a Violation*

To comply with this requirement River Watch has set forth below narratives describing with particularity the activities leading to violations. In summary RCRA requires that the environment and public be protected from the hazardous wastes, in the form of

human residential waste and commercial waste, such as that discharged by the City. The pollutants, including coliform bacteria and other pathogens, discharged from the City's collection system as identified in this NOTICE, constitute hazardous waste under RCRA, and are required to be properly managed so as not to cause harm and endangerment to the public or the environment. RCRA specifically protects groundwater.

The liability of the City stems from its ownership and operation of its wastewater collection system, which violates RCRA and has contributed to the past or present handling, storage, transportation, or disposal of any hazardous waste which may present an imminent and substantial endangerment to health or the environment. By allowing its sewage collection system to deteriorate and develop structural defects, such as corrosion, ruptures and misaligned joints which allow the infiltration of rainwater and the exfiltration of untreated waste, the City has caused pollutants to be discharged to ground and surface waters.

3.      *The discharger responsible for the alleged violation.*

The discharger responsible for the alleged violations are is the City of Sausalito, referred to as the City throughout this NOTICE, and those of its employees responsible for compliance with the applicable law.

4.      *The location of the alleged violation.*

The location or locations of the various violations are identified in the BACKGROUND section and narratives in this NOTICE and in records either created or maintained by or for the City which relate to the City's operation of its sewage collection system, including the records cited below and the description of specific incidents referenced below.

5.      *The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.*

River Watch has examined Regional Water Quality Control Board ("RWQCB") records for the period from December 1, 2004 to May 2, 2007. The range of dates covered by this NOTICE is from December 1, 2004 to May 2, 2007. River Watch will from time to time update this NOTICE to include all violations which occur after the range of dates currently covered by this NOTICE. The violations identified in this NOTICE such as discharging pollutants to groundwater and surface waters, failure to obtain RCRA permits, failure to implement the requirements of RCRA, failure to meet water quality objectives, etc., are continuous. Therefore each day is a violation. River Watch believes all violations set forth in this NOTICE are continuing in nature or will likely continue after the filing of a

lawsuit. Specific dates of violations are evidenced in the City's own records (or lack thereof) or files and records of other regulatory agencies including the RWQCB.

6.     *The full name, address, and telephone number of the person giving notice.*

The entity giving this Notice is Northern California River Watch, a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California. Its address is 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA, 95472. Telephone 707-824-4372.

BACKGROUND

The City collects residential and commercial sewage which it pumps to the treatment plant in Sausalito owned and operated by the Sausalito-Marin City Sanitary District, (hereafter "SMCSD"). SMCSD has identified the City's collection system as a significant source of increased wet weather flows into the treatment plant because of the high level of inflow and infiltration ("I/I") of stormwater and groundwater into the City's system. In particular, the SMCSD has identified high salinity I/I into the City's system as a major source of saltwater intrusion into the SMCSD treatment plant, which the SMCSD identifies as a significant factor in causing total suspended solids and biological oxygen demand effluent limit violations. (see Excerpt from 2004 Annual Self-Monitoring Program Report, submitted with May 6, 2005 Comments to RWQCB on Treatment Plant Compliance Inspection Report).

The structural defects in the City's collection system which allow I/I into the system result in a build-up of pressure which causes sewage system surface overflows. Overflows caused by blockages and I/I result in the discharge of raw sewage into adjacent waters, including San Francisco Bay, which are waters of the U.S.. Sewage system overflows are evidenced in San Francisco Bay Water Board SSO Reporting Program Database Records (from December 1, 2004 to May 2, 2007), including the overflow of 900 gallons which occurred on June 23, 2006 on the beach at the intersection of Bridgeway and Valley and discharged directly into San Francisco Bay. Additionally, there are unrecorded overflows witnessed by local residents.

Underground leakages caused by pipeline ruptures and other structural defects result in discharges to adjacent surface waters via underground tributaries, preferential pathways and other conduits. Surface waters become contaminated with fecal coliform, exposing people to human pathogens. The City's chronic collection system failures pose a substantial threat to public health. The City's ongoing violations pose an immediate threat to public health and the environment, both from surface water impacts of surface overflows and underground leakage of untreated sewage, polluting both surface and groundwater.

## CONTINUING VIOLATIONS

RWQCB records indicate that structural defects in the City's collection system are an ongoing source of I/I into the SMCSD treatment plant. These same defects continue to allow exfiltration of untreated sewage into the soil and groundwater. The City is currently regulated under the Statewide General Waste Discharge Requirements For Sanitary Sewer Systems, Order No. 2006-003-DWQ (hereafter "Statewide WDR"), which was adopted on May 2, 2006. The Statewide WDR requires satellite systems to develop a Sewage System Management Plan, (hereafter "SSMP") within a deadline of 51 months after adoption of the WDR, for satellite systems with populations under 2,500. The SSMP includes a system evaluation and maintenance plan, but the contemplated time lines for implementation of concrete measures are as long as 10 to 15 years into the future. The City's ongoing violations pose an immediate threat to public health and the environment. River Watch believes an aggressive collection system management, operation and maintenance ("CMOM") program, with prioritized repairs based on human marker testing of waters adjacent to sewer lines, is necessary to avoid further RCRA violations by the City.

## REGULATORY STANDARDS

The RWQCB has adopted Maximum Contaminant Levels ("MCLs") and/or Water Quality Objectives ("WQOs") for constituents in surface and groundwater within the region to ensure protection of the beneficial uses of water.  Several beneficial uses of water exist, and the most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions need to be considered which evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels. Existing and potential beneficial uses of area groundwater include domestic, agricultural, industrial and municipal water supply.

The RWQCB has also adopted a Water Quality Control Plan or "Basin Plan", which designates all surface and groundwater within the Bay Area regions as capable of supporting domestic water supply.

Sewage has been characterized as "hazardous waste" and "solid waste" within the meaning of RCRA provisions.  Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of sewage.

## VIOLATIONS

Between December 1, 2004 and May 2, 2007, ongoing violations of RCRA by the City as described herein have occurred.  The City has caused or permitted, causes or permits,

or threatens to cause or permit hazardous waste to be discharged into waters of the State and now creates, or threatens to create, a condition of pollution or nuisance. The discharge and threatened discharge of such waste is deleterious to the beneficial uses of water, and is creating and threatens to create a condition of pollution and nuisance which will continue unless the discharge and threatened discharge is permanently abated.

Past or current violations of RCRA authorize the assessment of civil penalties. The enforcement provisions of 42 U.S.C. §§ 6928(a) and 6928(g) provide for penalties when conditions of hazardous waste disposal have been alleged - as River Watch has alleged in this Notice with respect to the City's sewage collection system. Accordingly, under these provisions, persons or entities violating RCRA are subject to substantial liability to the United States on a per-day basis.

The City's storage and conveyance of sewage wastes in its sewage collection system between December 1, 2004 to May 2, 2007 has allowed significant quantities of hazardous constituents to be released or discharged into soil and groundwater in violation of provisions of the RCRA and California hazardous waste regulatory programs. The violations of RCRA alleged in this NOTICE are knowing and intentional in that the City in the past has stored and conveyed hazardous substances, in the form of untreated sewage, in pipelines which City staff knew to be damaged to the extent that they were unable to contain the sewage and avoid leakage into soil and ground water. City staff have known of the contamination of soil and ground water since at least 2000, and have also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to its sewer pipelines, and to continually contaminate and re-contaminate actual and potential sources of drinking water in addition to surface waters.

The City has collected, treated and stored industrial and domestic waste in a manner which has allowed significant quantities of pollutants to be discharged to soil and groundwater beneath its facilities and beneath adjacent properties where its collection system is located. These pollutants are known to harm both plants and animals. These pollutants are creating an imminent and substantial endangerment to public health and the environment.

Violations of RCRA of the type alleged herein are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of California. With every discharge, groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

## VIOLATIONS OF PERMITS, STANDARDS AND REGULATIONS
42 U.S.C. § 6972(a)(1)(A)

Provisions of RCRA apply to the use and operation of waste disposal facilities including domestic sewage when such facilities are not already covered by a CWA § 402 permit. The City has no RCRA permit for the disposal, storage or use of hazardous or solid waste.

## IMMINENT AND SUBSTANTIAL ENDANGERMENT
42 U.S.C. § 6972(a)(1)(B)

The City's discharges have contaminated surface and groundwaters in a manner that adversely affects the beneficial uses of these waters, exceed MCLs and WQOs and in general create imminent and substantial endangerment to the health and safety of the public and to the environment.

In addition to the violations set forth above, this NOTICE is intended to cover all violations of RCRA evidenced by information which become available to River Watch after the date of this NOTICE, and seeks all penalties and other enforcement provisions related to such violations.

The violations of the City as set forth in this NOTICE affect the health and enjoyment of members of River Watch who reside, work and recreate in the affected area and use this watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Their health, property rights, use and enjoyment of this area is specifically impaired by the City's violations of RCRA.

## CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Offices of Jack Silver
Jerry Bernhaut, Esquire
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax. 707-528-8675

CONCLUSION

River Watch believe this NOTICE sufficiently states the grounds for filing suit under the statutory and regulatory provisions of RCRA.  At the close of the notice periods or shortly thereafter, River Watch intends to file suit against the City under the provisions of RCRA for each of the violations alleged herein.

During the 90-day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced.  If the City wishes to pursue such discussions in the absence of litigation, please do so immediately so that we might be on track to resolving these before the end of the notice period.  River Watch will not delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours,

Jerry Bernhaut

cc:
Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental  Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Dorothy R. Rice,  Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California  95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 "I" Street
Sacramento, CA 95814

City Attorney and City Council
City of Sausalito
420 Litho Street
Sausalito, CA 94965